**John Bernard DOYLE, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 20401.**

United States Court of Appeals
Ninth Circuit.
Aug. 29, 1966.

Rehearing Denied Oct. 10, 1966.

---

9.  Barkeij v. Lockheed Aircraft Corp., 210 F.2d 1 (9th Cir. 1954).

Fred L. Stewart, Smith, Scott & Morthland, Yakima, Wash., for appellant.

Smithmoore Myers, U. S. Atty., C. D. Fransen, Asst. U. S. Atty., Spokane, Wash., for appellee.

Before CHAMBERS, POPE and HAMLEY, Circuit Judges.

POPE, Circuit Judge.

On this appeal we are reviewing an order denying a petition filed by the appellant Doyle pursuant to Sec. 2255 of Title 28 U.S.C., for an order vacating sentence. Doyle, an Indian, had been indicted pursuant to Secs. 1111(a), 1152 and 1153 Title 18 U.S.C., on a charge of murder committed within the Yakima Indian Reservation in the State of Washington. On October 3, 1959, a verdict was returned by the jury finding Doyle guilty of murder in the second degree and on October 5, 1959, he was sentenced to life imprisonment. On the same day a motion for new trial was filed on his behalf which was denied by the court on October 8, 1959. He therefore had until October 18, 1959, in which to file notice of appeal. No such notice was filed by him or on his behalf. His petition to vacate the sentence pursuant to Sec. 2255 was filed on June 24, 1960, and on the basis of affidavits filed by him he was permitted to prosecute the same in forma pauperis. The district judge who had imposed sentence heard and denied the petition. Upon appeal from the order of denial this court reversed and remanded the matter to the district court for an evidentiary hearing upon the allegations contained in the application for vacating the sentence on the ground that Doyle was entitled to a hearing and a determination of the issues presented on the basis of findings of fact and conclusions of law. Doyle v. United States, 9 Cir., 336 F.2d 640. Thereupon a further hearing of the application was had, evidence was received and findings of fact and conclusions of law made and entered, and an order made denying Doyle's motion to vacate sentence. This is an appeal from that second order denying Doyle's application.

The background of Doyle's prosecution, conviction and sentence was substantially as follows: prior to June 9, 1959, he had been adjudged mentally incompetent and was confined in the Northern State Hospital at Sedro Wooley, Washington. On or about that day he escaped from that hospital. On June 23, 1959, a complaint

was filed by an agent of the Federal Bureau of Investigation charging him with first degree murder of Vivian A. Meagher on June 22, 1959. A warrant was issued and he was arrested on that day. On June 24, 1959, he was brought before the U.S. Commissioner at Yakima, Washington, and informed of his constitutional rights, including his right to counsel. He advised the Commissioner that he had no attorney; that he was a ward of Northern State Hospital which might get him an attorney. He waived the assistance of counsel at the preliminary hearing and he was bound over to the district court. A report of the proceedings of the Commissioner contained the notation: "Parents might obtain attorney." The United States Attorney then moved for a judicial determination of the mental competency of Doyle to stand trial and a Judge of the court was advised of this by mail. The Judge, on June 25, telephoned the Commissioner and the deputy clerk of the court at Yakima and inquired as to the status of the proceedings and whether petitioner had counsel. The Commissioner informed the Judge that a preliminary hearing had been held; that petitioner had no counsel but that he understood the parents of the defendant might secure an attorney for him. On that date the Judge telephoned J. P. Tonkoff, a member of the Yakima bar, advising him that he was appointed as counsel for Doyle; that Doyle would need representation at the hearing on the motion of the United States Attorney which was set for June 29, 1959. As it afterwards appeared, Doyle was not an indigent or without funds. He had the sum of $2788.74 credited to his account in the Portland area office of the Bureau of Indian Affairs. It thus appears that initially Doyle had no opportunity to participate in the selection of an attorney.

█ The first specification of error presented on this appeal is to the effect that the district court erred in denying the motion to vacate the sentence on the ground that Doyle was denied counsel of his own choosing. While there was obviously some mistake in the manner in which the Judge named counsel to represent Doyle without any apparent inquiry as to the latter's financial condition, or as to his desires or the desires of his parents with respect to a choice of counsel, yet we think that this alleged error is not available to appellant on the appeal before us because the court below has found that on June 29, 1959, when Doyle appeared before the court and Mr. Tonkoff was present and acting as his counsel, the court inquired of Doyle whether he had a chance to talk with Mr. Tonkoff, the inquiry was answered in the affirmative and the court then inquired "Do you accept him as your counsel?" to which the defendant replied, "Yes." The court below also found that at that appearance inquiry was made by the Judge as to whether Tonkoff had talked with Doyle's parents. The reply was that the parents, who were present in the courtroom, were agreeable to have Tonkoff represent their son. The court then appointed two qualified psychiatrists to examine Doyle. On the basis of their reports the court, after examining Doyle, made findings and entered an order to the effect that Doyle was mentally competent to understand the proceedings against him and to assist in his defense.

An indictment was returned by the grand jury charging Doyle with murder, as previously noted, and upon arraignment upon that indictment, the following took place: "The Court: Mr. Doyle, this matter is coming before the Court today on your arraignment. You have your attorney present with you, do you? The Defendant: Yes. The Court: And who is your attorney? A. Mr. Tonkoff. The Court: And you have accepted him as your attorney in the defense of this action, is that correct? A. Yes."

The second and third specifications of error presented here are as follows: "2. The district court erred in denying appellant's motion to vacate sentence on the ground that appellant's appeal of the judgment and sentence was blocked.

"3. The district court erred in denying appellant's motion to vacate sentence

on the ground that appellant did not intentionally relinquish his known right to appeal by a considered choice on his part."

In respect to these two contentions the appellant is not confronted with findings of fact which would, in our view, constitute an obstacle to his contentions here. The court below made three findings with respect to an appeal from the judgment of conviction. Those findings were as follows:

"32. No notice of appeal was ever filed. Tonkoff advised petitioner and members of his family against an appeal.

"33. Neither the court nor Tonkoff was advised by petitioner or members of his family, within the statutory period for perfecting an appeal, that petitioner desired to take an appeal.

"34. While petitioner did not request Mr. Tonkoff to take an appeal within the statutory period and Tonkoff did not agree to do so, it is uncertain whether petitioner intentionally relinquished his 'known right to appeal by a considered choice on his part.' "

■ While we find it unnecessary to determine whether Tonkoff's actions, or failure to act, in connection with an appeal would constitute a showing of a denial of adequate representation by counsel, we do think that the record here is replete with evidence that Doyle's right to appeal was frustrated; that he had substantial reasons for an appeal; and that he did not intentionally relinquish his right to appeal by a considered choice on his part.

As the district court found, Tonkoff did advise Doyle and the members of his family against an appeal. Although, as we shall note hereafter, this was bad advice, that alone would not constitute a basis for vacating a sentence or for relief under Sec. 2255. The evidence does show that substantial representations were made by Tonkoff with respect to the possibility of an appeal. We have previously noted that Doyle had to his credit on the books of the Tribe and in the hands of the Indian Bureau, the sum of $2788.-

77. This was not known at the time Tonkoff was first appointed by the court; the court evidently assumed he was an indigent defendant unable to secure his own representation; Tonkoff learned of this fund after his appointment. He requested that the sum be assigned to him "for expenses and for payment of such time as the funds would cover." On August 10, 1959, the court, on application of Tonkoff, made an order that the agent in charge of the Yakima Indian Agency having control of these funds "is hereby authorized to release and deliver to the defendant's attorney J. P. Tonkoff * * * the sum of $3000 or any part of said sum which is now in possession of the Yakima Indian Agency and which funds belong to the above named defendant." On September 3, 1959, the Superintendent of the Portland Indian office approved the payment to Tonkoff and check for the full $2788.77 was issued September 10, 1959. After the judgment of conviction, Tonkoff moved the court for payment of expert witness' fees for the defendant and such payment was ordered in the sum of $550. As the $550 came from Government sources, the court below correctly found that the bulk of the payment of $2788.74 represented attorney's fees. At any rate, it is plain that from September 10, 1959 on, Tonkoff had the $2788.74, or the bulk thereof, and Doyle had nothing. Under those circumstances Doyle was an indigent and in the position of a pauper.

The file contains an affidavit by Tonkoff stating that "This affiant did advise the petitioner and his family that no successful appeal could be made from the jury verdict and the court's judgment and that the record would cost approximately $5000. * * *" Doyle testified at the hearing below that he understood from his family that Tonkoff's advice was that an appeal would cost $5000. Nowhere does the record show that Tonkoff advised Doyle or his family of their rights under Rule 75(m) of the Federal Rules of Civil Procedure, or under Rule 10 of the Rules of this court, or under Title 28, Sec. 753(f) U.S.C., or under

such decisions as Johnson v. United States (1957) 352 U.S. 565, 77 S.Ct. 550, 1 L.Ed.2d 593 cited infra. Quite the contrary.

Under Rule 75(m) it would appear that since Doyle would be entitled to proceed on his appeal in forma pauperis, the district court could specify an economical manner in which the record on appeal could be prepared and settled. Tonkoff's testimony was that he based his estimate upon his assumption that the entire record would have to be printed. Under Rule 75, the district court could have directed the appeal to proceed on a typewritten record and under Rule 10 of the Rules of this court, in cases prosecuted in forma pauperis, the appellant may be permitted to prosecute on a typewritten manuscript; and under the same Rule, any appellant, (whether proceeding in forma pauperis or not), may apply for and procure permission to prosecute an appeal on a typewritten transcript. Sec. 753(f) of Title 28, supra, provides that one appealing in forma pauperis is entitled to a transcript at government expense. And, as we shall hereafter note, a pauper has a constitutional right to a free transcript.

Tonkoff's statement as to the cost of an appeal and his failure to advise that an appeal could have been taken in forma pauperis was not only ill advised but a reckless misrepresentation. Directly in point here is the case of Lyles v. United States, 5 Cir., 346 F.2d 789, 791. In that case the court appointed counsel advised the petitioner that it would cost about $500 to file and perfect an appeal of his sentence. The court said (p. 791): "It is settled that an indigent in federal court must be afforded counsel on appeal from a judgment of conviction, unless it is judicially determined that his appeal is frivolous. Just as it has been held to be a concomitant of the right to counsel at trial that one is entitled to be apprised of

that right, it would seem to be a concomitant of the right to counsel on appeal that one be apprised of that right. Lyles alleges, in effect, that he was affirmatively misled—not merely passively uninformed—of his rights under 28 U.S.C. § 1915 by the counsel appointed to serve him. If that be true, then by analogy to the holding in Pate v. Holman, supra, his right to appeal was so frustrated as to entitle him to relief under § 2255." The court there noted also counsel's dereliction in respect to his duty to inform his client of the right to appeal. The court stated (footnote 5, p. 792): "Note that Fed.R.Crim.P. 37(a) (2) provides that '[w]hen a court after trial imposes sentence upon a defendant not represented by counsel, the defendant shall be advised of his right to appeal and if he so requests, the clerk shall prepare and file forthwith a notice of appeal on behalf of the defendant.' Thus, if Lyles had no counsel, there would be an affirmative duty upon the trial court to inform him of his right to appeal. Here, where his counsel was appointed by the court, it would seem that that duty was transferred to the appointed counsel and that the latter's dereliction, if proved, would be enough to entitle Lyles to relief." [1]

■ We think it is plain that an accused defendant's right to due process does not terminate with the verdict and sentence in the lower court. The decisions of the Supreme Court in Griffin v. People of State of Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891, and in Douglas v. People of State of California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811, demonstrate that the accused's constitutional rights must be protected to the extent of providing a sufficient appeal whenever under the law a judgment is appealable. It is true that in those cases special emphasis was laid on the denial of equal protection to the appellants, but it is just as true in respect to the right of

1. This court found that the same duty of counsel to notify his client of his right to appeal arose from what Rule 37(a) (2) "appears to assume", namely, that "when the defendant *was represented by* counsel at the trial, the counsel would advise the defendant of his right to appeal." Dodd v. United States, 9 Cir., 321 F.2d 240, 245, 246.

appeal from a federal judgment that the due process requirements of the Fifth Amendment also require that an appeal of a convicted defendant may not be frustrated. As stated by the Fifth Circuit in Pate v. Holman, 341 F.2d 764, 770: "Recent Supreme Court decisions agree that the Equal Protection Clause and the Due Process Clause too, we believe, are violated when a State denies an indigent defendant any of the necessary incidents of appeal, including representation by counsel." (Citing Douglas v. People of State of California, supra, and Draper v. State of Washington, 372 U.S. 487, 83 S.Ct. 774, 9 L.Ed.2d 899.)

We think that as suggested in Bolling v. Sharpe, 347 U.S. 497, 499, 500, 74 S.Ct. 693, 694, 98 L.Ed. 884, it would be "unthinkable" that a convicted defendant in a federal court could have any less rights to perfect an appeal than a person such as Griffin, convicted in a state court. As the Court there said: "Discrimination may be so unjustifiable as to be violative of due process."

The Supreme Court has decided exactly that in respect to the right to appeal in forma pauperis. In Coppedge v. United States, 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962), the Court was dealing with the application of a person, convicted in a federal district court, for leave to appeal in forma pauperis. The district court had denied the application and certified that the appeal was not taken in good faith. After petitioner had filed a similar application in the court of appeals which, after hearing, denied the same, the Supreme Court reversed the denial saying (p. 446, 82 S.Ct. p. 921): "Nevertheless, if from the face of the papers he has filed, it is apparent that the applicant will present issues for review not clearly frivolous, the Court of Appeals should then grant leave to appeal in forma pauperis, appoint counsel to represent the appellant and proceed to consideration of the appeal on the merits in the same manner that it considers paid ap-

peals. If, on othe other hand, the claims made or the issues sought to be raised by the applicant are such that their substance cannot adequately be ascertained from the face of the defendant's application, the Court of Appeals must provide the would-be appellant with both the assistance of counsel and a record of sufficient completeness to enable him to attempt to make a showing that the District Court's certificate of lack of 'good faith' is in error and that leave to proceed with the appeal in forma pauperis should be allowed. If, with such aid, the applicant then presents any issue for the court's consideration not clearly frivolous, leave to proceed in forma pauperis must be allowed.

In so holding we have been impelled by considerations beyond the corners of 28 U.S.C. § 1915, considerations that it is our duty to assure to the greatest degree possible, within the statutory framework for appeals created by Congress, equal treatment for every litigant before the bar." [2]

■ When a defendant is granted leave to proceed in forma pauperis, he must be furnished not only the aid of counsel but he must be supplied at Government expense a sufficient record to make manifest the basis of his claim of error. Johnson v. United States, 352 U.S. 565, 77 S.Ct. 550. "A court-appointed counsel who represents the indigent on appeal gets at public expense, as a minimum, the transcript which is relevant to the points of error assigned." Hardy v. United States, 375 U.S. 277, 279, 84 S.Ct. 424, 426, 11 L.Ed.2d 331. It is contemplated by the statute relating to proceedings in forma pauperis, Title 28, Sec. 1915, that the United States may be required to pay the cost of a stenographic transcript or printed record in such cases.

■ We hold that the court at the trial of the indictment against Doyle committed reversible error in its instruction to

---

**2.** The Court then referred in a footnote to Griffin v. People of State of Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891, thereby suggesting that the two cases were comparable.

the jury with respect to the definition of insanity. The court instructed the jury as follows: "Under the law applicable to the defendant's plea of insanity and mental irresponsibility every man is presumed to be sane and mentally responsible, and to intend the natural and usual consequences of his own acts. The government need not prove insanity [sic] in the first instance. The defendant has the burden, in the first instance, of making some showing of insanity or mental irresponsibility. However, when the defendant introduces some evidence to raise the issue of insanity his sanity at the time of the commission of the offense becomes an element of the crime which, like all other elements of the crime, must be proved by the government beyond a reasonable doubt. The rule is that if, from the whole evidence, the jury has a reasonable doubt as to the defendant's mental competency or mental responsbility the accused is entitled to an acquittal on the grounds of such insanity or mental irresponsibility." It is clear that this instruction was erroneous in that it allowed the jury to determine whether the evidence was sufficient to inject the issue of insanity into the case.

Numerous cases directly in point note that such an instruction constitutes error. Thus in Otney v. United States, 10 Cir., 340 F.2d 696, the court had before it an instruction substantially the same as that given in the Doyle trial. The court said (p. 698): "This instruction is contrary to the established rule in this Circuit and elsewhere to the effect that 'the sufficiency of the evidence to dissipate the presumption of sanity and raise the issue of insanity is one of law for the court to decide in the first instance.' * * * And, 'any relevant evidence of mental illness before or after the offense is sufficient to dissipate the legal presumption * * *.' * * * The sufficiency of the evidence to overcome the legal presump-

tion of sanity was not within the province of the jury or of concern to it. It was, therefore, prejudicial error for the Court to submit this issue to the jury. Instead, the Court should have determined, as a matter of law, that the presumption of sanity no longer existed and accordingly instructed the jury that the defendant's mental competency to commit the offense was an essential element of the offense charged and the burden was upon the Government to prove the defendant's criminal responsibility beyond a reasonable doubt." The vice in the instruction given here is that it is impossible to ascertain what the jury did pursuant to it. The jury may well have decided that the defendant had not fulfilled the burden of "making some showing of insanity or mental irresponsibility." Hence the jury under that instruction may well have concluded that the defendant's sanity did not become "an element of the crime" and that there was therefore no burden on the Government to prove sanity.

◼ Under the rule noted in Otney, supra, it was the duty of the court in this case to advise the jury that, under the circumstances here present, defendant's sanity was an element of the crime which the Government must prove beyond a reasonable doubt. The defendant here was a recent escapee from an asylum to which he had been committed as an insane person. The court therefore had no option in the premises and should have advised the jury accordingly. In failing to carry out that duty the court committed error which was prejudicial under the circumstances of this case.

The rule stated in Otney, supra, has been followed in a substantial number of other cases, and we know of no decisions to the contrary. In accord with that case are the following: Tatum v. United States, 88 U.S.App.D.C. 386, 190 F.2d 612, 616;[3] Fitts v. United States, 10 Cir.,

---

**3.** "In sum, the function of the trial court in regard to the issue of sanity is to determine whether that issue is brought into the case by evidence. If it is, then it should be submitted to the jury with instructions that if the jury has a reasonable doubt of the defendant's sanity, there must be an acquittal."

284 F.2d 108, 112;[4] Phillips v. United States, 10 Cir., 311 F.2d 204; McDonald v. United States, 114 U.S.App.D.C. 120, 312 F.2d 847, 849.[5] In Hall v. United States, 4 Cir., 295 F.2d 26, 28, the court quoting from a decision of the Fifth Circuit, noted that only *"slight evidence"* is sufficient to raise the issue as to sanity to be submitted to the jury, and that "no quantitive measure is prescribed anywhere, nor could one be formulated, that would enable the *trial judge* to determine precisely and automatically how much evidence is sufficient to raise an issue of sanity of the accused." (Emphasis added)

We think that essentially the error in this instruction resembles that which the Supreme Court noted in Jackson v. Denno, 378 U.S. 368, 379, 387, 84 S.Ct. 1774, 12 L.Ed.2d 908. In that case, the State court trying the case had before it the question as to whether a certain confession made by the accused had been coerced. The State court followed the procedure which had previously been held valid in Stein v. People of State of New York, 346 U.S. 156, 73 S.Ct. 1077, 97 L.Ed. 1522 which was to leave to the jury the determination of the voluntary character of the confession and also its truthfulness. The Court noted that when the jury returned its guilty verdict, it was "impossible to tell whether the trial jury found the confession voluntary and relied on it, or involuntary and supposedly ignored it." The Court held that under these circumstances there had been a failure to protect the rights of the accused and that the accused was "entitled to a determination of the voluntariness of his confession in the state courts in accordance with valid state procedures," which determination should be by a body other than a jury which is trying his guilt or innocence. Because the Court could not determine how the jury resolved the issues submitted to it, it would not assume they were reliably and properly resolved against the accused who was entitled to a "reliable determination", which under the circumstances there existing had not been made available to him.

It is true that as noted by the trial court the defense here did not make an objection or take an exception to this particular instruction. In our opinion it was so plainly erroneous and prejudicial that a court upon appeal would necessarily notice it as plain error, as was done in some of the cases to which we have made reference. Thus in Tatum v. United States, supra, the Court held that the error in that instruction affected substantial rights of the accused, and although he had not excepted to it, it constituted plain error prejudicial to the defendant. In Fitts v. United States, supra, 284 F.2d at p. 113, the Court said: "In cases like these, however, where the mental capacity of the accused is in issue, it is our duty to notice and correct the error." This was said although the appellant had not made objection to the erroneous instruction to the jury.

In this particular case, also, there was presented to the court by the defense a request for what was a proper instruction upon this question, which the court refused.[6] But in any event, any court upon appeal would note the error under

---

4. "We think the question of the sufficiency of the evidence to dissipate the presumption of sanity and raise the issue of insanity is one of law for the court to decide in the first instance."

5. "If there is 'some evidence' supporting the defendant's claim of mental instability he is entitled to have that issue submitted to the jury." In this case it was the duty of the *Judge* to tell the jury that sanity was an issue which the government must prove beyond a reasonable doubt. The court left it to the jury here to decide whether it would pass upon that issue or not.

6. The requested instruction was as follows: "I instruct you that mental competency and responsibility on the part of the defendant is an element in the crime charged and is essential as any act done by him in the commission of the alleged charge.

"In this respect I instruct you that if you, the jury, have a reasonable doubt as to his mental competency or mental responsibility, he is entitled to the benefit of that doubt, and you are to acquit him."

its power to do so pursuant to Criminal Rule 52(b).

For the reasons here stated we are of the view that upon the showing made by the appellant he is entitled to relief under Sec. 2255 of Title 28 U.S.C.

There remains the question of what is appropriate relief. In the case of Lyles v. United States, supra, the court had to decide a similar problem as to what was appropriate relief under its circumstances. It decided that it should require a remand to the district court to permit the appellant to have a hearing on his allegations stating the frustration of his right to appeal. In that case, however, the decision had been based upon the allegations of the appellant's petition. In Dodd. v. United States, 9 Cir., 321 F.2d 240, similar relief, by way of remand for hearing, was ordered. In the case before us, however, the evidence with respect to the frustration of the petitioner's appeal, is in the record. It would be impossible on this record to deny that when the time for appeal came Doyle was indigent and without funds and entitled to an order permitting his appeal in forma pauperis. All of the advice given to him then by Tonkoff ignored that circumstance and his reference to a possible cost of $5000 for the appeal [7] amounted to a suggestion that large sums would have to be raised to permit an appeal. No holding is permissible here other than that Doyle was misled with respect to the possibility of an appeal and that any appeal on his part was effectively frustrated. There was no intentional waiver of his right to appeal.

We have also held that there was a substantial and reversible error in the instruction which we have here discussed and it would therefore appear to be inevitable that even if we had the power to direct the granting of an appeal, the ultimate result would be a reversal of conviction.

We therefore hold that the sentence imposed upon the appellant must be vacated and set aside. Cf. Taylor v. United States, 8 Cir., 226 F.2d 337. The cause is remanded to the district court with directions to vacate and set aside the sentence imposed upon the appellant but without prejudice to the rights of the United States to proceed to try him anew upon the indictment. It is so ordered.

---

**7.** Although, as Tonkoff's affidavit stated, he said the appeal would cost $5000, he testified at the trial that he advised the cost would be "anywhere between $2500 and $5000, because in those days you had to print the record."