62 F.3d 1425
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
J. Transito CAMPOS-BERMUDEZ; Salomon Campos-Bermudez,
Defendants-Appellants.
 No. 94-15582.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 13, 1995.
Decided Aug. 8, 1995.
 
 Before: SNEED, CANBY and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 I. OVERVIEW
 
 2
 J. Transito Campos-Bermudez and Salomon Campos-Bermudez appeal from the district court's denial of their petition for writ of error coram nobis. For the reasons discussed below, we affirm the district court's order.
 
 II. BACKGROUND
 
 3
 Petitioners are citizens of Mexico and lawful permanent residents of the United States. On March 5, 1992, after petitioners returned from a vacation in Mexico, they were stopped by the Border Patrol in California. The Border Patrol searched their vehicle and found five undocumented aliens in addition to petitioners' families. The Border Patrol arrested petitioners and took them to the Border Patrol station in Blythe, California, for questioning.
 
 
 4
 The next day, petitioners and the undocumented aliens were transported to Yuma, Arizona. The Border Patrol filed a criminal complaint against petitioners in United States District Court charging them with smuggling five undocumented aliens into the country in violation of 8 U.S.C. Sec. 1324(a) (a felony), and aiding and abetting illegal entry in violation of 18 U.S.C. Sec. 2; 8 U.S.C. Sec. 1325(a) (a misdemeanor).
 
 
 5
 Before their initial appearance before a magistrate judge, petitioners were referred to Bruce Yancey, a criminal defense panel attorney. Petitioners were not informed of their right to hire an attorney other than Yancey, but Yancey never told petitioners that they were required to hire him. Yancey himself conducted the financial screening and determined that, because petitioners could pay the fine for the misdemeanor charge, they could pay Yancey for his services.
 
 
 6
 With the help of a translator, Yancey discussed possible sentences petitioners might receive, but did not inform petitioners of the minimum sentence they could receive if convicted on the felony charge. Yancey had the translator read the complaint's Statement of Factual Basis to petitioners, and, when petitioners did not claim they were innocent, Yancey decided not to inquire into the government's evidence against petitioners. After conferring with Yancey, petitioners decided to plead guilty to the misdemeanor charge in exchange for the government's dropping the felony charge.
 
 
 7
 Petitioners entered pleas of guilty to the misdemeanor charges. As petitioners left the courtroom, a Border Patrol agent approached them and served them with Orders to Show Cause, which initiate the deportation process. They did not sign the orders at the time, but within four months they learned that they had been placed in deportation proceedings.
 
 III. DISCUSSION
 Standard of Review
 
 8
 We review de novo a denial of a petition for a writ of error coram nobis. United States v. Walgren, 885 F.2d 1417, 1420 (9th Cir. 1989). To qualify for coram nobis relief, petitioners must demonstrate:
 
 
 9
 (1) a more usual remedy is not available;
 
 
 10
 (2) valid reasons exist for not attacking the conviction earlier;
 
 
 11
 (3) adverse consequences exist from the conviction sufficient to satisfy the case or controversy requirement of Article III; and
 
 
 12
 (4) the error is of the most fundamental character.
 
 
 13
 Hirabayashi v. United States, 828 F.2d 591, 604 (9th Cir. 1987) (footnote omitted). The district court found that petitioners did not establish the existence of the fourth criterion.
 
 Choice of Counsel
 
 14
 We agree with the district court that, although the manner in which petitioners "chose" Yancey as their counsel is not exemplary, petitioners were not deprived of their right to choice of counsel. Petitioners cite numerous cases upholding a defendant's right to choose retained counsel, but nearly all of these are cases in which the defendant affirmatively selected counsel and that choice was challenged for one reason or another. See, e.g., United States v. Washington, 797 F.2d 1461, 1465 (9th Cir. 1986).[1] In contrast, petitioners in this case never told Yancey or the court that they wished to be represented by a different attorney. Nor were petitioners ever told that they were required to hire Yancey. Petitioners have referred us to no case in which a right to choose counsel was enforced without the defendant's assertion of that right in the trial court. Indeed, Cheek v. United States, 858 F.2d 1330, 1334 (9th Cir. 1988), seems to require assertion. In any event, we are unwilling to fashion a rule requiring that every defendant who appears with retained counsel must be advised of the right to select a different counsel. In light of petitioners' failure to request different counsel and the fact that petitioners were not intentionally misled into believing that they were required to hire Yancey, we agree with the district court that petitioners were not denied their right to choose their own counsel.
 
 Ineffective Assistance of Counsel
 
 15
 Petitioners argue that they were denied their Sixth Amendment right to effective assistance of counsel. They point out that Yancey failed to inform them of the immigration consequences of their guilty pleas. They also argue that Yancey's decision not to investigate the evidence against them solely because they did not claim to be innocent amounted to ineffective assistance of counsel.
 
 
 16
 To gain a reversal for ineffective assistance, the petitioners must show
 
 
 17
 [f]irst ... that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, ... [petitioners] must show that the deficient performance prejudiced the defense.
 
 
 18
 Strickland v. Washington, 466 U.S. 668, 687 (1984). This test applies to counsel's assistance with guilty pleas. Hill v. Lockhart, 474 U.S. 52, 57 (1985); Gonzalez v. United States, 33 F.3d 1047, 1051 (9th Cir. 1994).[2]
 
 
 19
 We reject petitioners' argument that counsel's failure to inform a defendant of possible deportation consequences of their plea amounts to defective performance under the first prong of the Strickland test. "Failure to advise [a defendant] of a collateral penalty [of pleading guilty] cannot be held to be below an objective standard of reasonableness" for purposes of effective assistance of counsel. Torrey v. Estelle, 842 F.2d 234, 237 (9th Cir. 1988). Becoming subject to deportation is a collateral consequence of entering a guilty plea. Fruchtman v. Kenton, 531 F.2d 946, 949 (9th Cir.), cert. denied, 429 U.S. 895 (1976). Therefore, Yancey's failure to advise petitioners that they would be subject to deportation if they pleaded guilty did not amount to defective performance.
 
 
 20
 As for petitioners' claim that they were denied effective assistance of counsel because Yancey failed to investigate the strength of the government's case before petitioners pled, we find that petitioners have not shown prejudice under the second prong of the Strickland test.[3]
 
 
 21
 To show prejudice, the petitioners must show that there is a reasonable probability that but for Yancey's failure independently to assess the strength of the government's case, petitioners would not have pleaded guilty to the misdemeanors. United States v. Freeny, 841 F.2d 1000, 1002 (9th Cir. 1988) (in order to satisfy second prong of Strickland test in plea agreement context, defendant must show that but for counsel's errors, he would not have pleaded guilty but would have insisted on going to trial); Doganiere v. United States, 914 F.2d 165, 168 (9th Cir. 1990), cert. denied, 499 U.S. 940 (1991) (same); see also Strickland, 466 U.S. at 694.
 
 
 22
 Petitioners contend that, because the government currently lacks admissible evidence and witnesses to support its case, it is clear that if Yancey had been performing up to Sixth Amendment standards he would have found that the government had no evidence to support its case. Had Yancey discovered this deficiency, petitioners argue, they probably would not have pleaded guilty but would have insisted on going to trial.
 
 
 23
 Petitioners misunderstand the inquiry before this panel. We need not determine whether the government currently has enough evidence successfully to prosecute petitioners, but whether, at the time petitioners were charged, the government lacked evidence against petitioners. Petitioners have not met their burden of showing that the government had little or no evidence against them on the date they were charged. For all we know, the undocumented aliens may have been still in custody and able to testify for the government. There is also no reason to believe that the border patrol agents who arrested petitioners were not available to give testimony supporting the government's case.
 
 
 24
 Because petitioners have not shown that additional investigation by Yancey would have aided their case, their claim of ineffective assistance fails. Petitioners have not shown that they were prejudiced under the Strickland test.
 
 Voluntariness of Guilty Pleas
 
 25
 Petitioners argue that they were given an inaccurate estimate of the sentence they would probably receive if convicted of the felony charges. Petitioners allege that Yancey only told them of the maximum sentence they could receive, but not of the minimum. They contend that their pleas were involuntary because they had inaccurate information about possible sentences they might face if they insisted on a trial.
 
 
 26
 We reject this argument because Yancey's advice to defendants that they could receive a five year sentence if convicted was not a "gross mischaracterization" of the sentence they were likely to receive if convicted. Iaea v. Sunn, 800 F.2d 861, 865 (9th Cir. 1986).
 
 
 27
 Petitioners' final argument is that, although the district court found that petitioners were advised of their rights at the time of their pleas, the meaning and value of these rights were never explained to them. Petitioners do not state which rights were not explained to them, or how such insufficient explanation rendered their pleas involuntary or unintelligent. Therefore, we reject this argument.
 
 Conclusion
 
 28
 We affirm the district court's denial of the petition for writ of error coram nobis.
 
 
 29
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir. R. 36-3
 
 
 [1]
 The sole case cited by appellants that does not involve such an affirmative choice of counsel was Doyle v. United States, 336 F.2d 640 (9th Cir. 1964). In Doyle, a defendant who could afford counsel was mistakenly appointed one. Because he accepted the appointed counsel without objection, we held that the defendant's right to choose counsel had not been violated. Doyle v. United States, 366 F.2d 394, 396 (9th Cir. 1966)
 
 
 [2]
 We reject petitioner's argument that the circumstances of their plea entries constituted a "breakdown of the adversarial system" so severe as to relieve them of their burden to show prejudice
 
 
 [3]
 Because we find that petitioners have not shown prejudice under the second prong of the Strickland test, we need not decide whether Yancey's performance was deficient under the first prong of the Strickland test