John Thomas FITTS, Appellant,

v.

UNITED STATES of America, Appellee.

No. 6438.

United States Court of Appeals Tenth Circuit.

Oct. 27, 1960.

Royce D. Sickler, Denver, Colo., for appellant.

Richard P. Matsch, Denver, Colo. (Donald G. Brotzman, Denver, Colo., on the brief), for appellee.

Before MURRAH, Chief Judge, and HUXMAN and PICKETT, Circuit Judges.

MURRAH, Chief Judge.

The appellant, John Thomas Fitts, is here in forma pauperis, by court-appointed counsel, complaining of a judgment and sentence on a jury verdict in the District Court of Colorado, for the interstate transportation of a stolen motor vehicle, in violation of Title 18 U.S.C. § 2312.

Appellant's first assignment of error is that the trial court unduly and prejudicially permitted cumulative evidence of the commission of another offense for which he was not on trial. The undersheriff of Scott County, Kansas, was permitted to testify, over the appellant's objections, that the appellant and others escaped from the Scott County jail on the night of August 3, 1959; and that the theft of the automobile in question was reported two days later. The jury was immediately instructed that the testimony of the witness concerning the alleged jail break was admitted solely for the purpose of establishing that the defendant was in this vicinity when the automobile was stolen; that he was not on trial for "jail break"; and that they should not consider that fact in determining guilt or innocence. Thereafter in the course of the trial, another witness testified, without objection, that he first met the appellant in the Scott County jail; that the appellant escaped with him and other prisoners; and that several days after the escape, he met appellant in Montana, at which time appellant was driving a black 1949 Chevrolet. A police officer in Englewood, Colorado, testified, without objection, that he arrested the appellant in Englewood because he was "wanted" for the escape in Kansas. A special agent for the Federal Bureau of Investigation testified concerning an interview with the appellant, wherein appellant related that he had escaped from the Scott County jail with other prisoners.

■■ While not complaining of the undersheriff's reference to the jail break under the cautionary instructions, appellant argues that repeated reference to it by other witnesses tended to unduly emphasize it as an unwarranted attack on his character, which was not put in issue. It is of course true that an accused cannot be convicted upon evidence that he committed another offense. But "Relevant evidence which tends to prove a material fact in the case on trial is admissible even though it incidentally shows that the accused committed another offense at a different time and place." O'Dell v. United States, 10 Cir., 251 F.2d 704, 707. Evidence of the jail break was undoubtedly competent to show that appellant was in the vicinity of the theft of the automobile. And, reference to the escape in the testimony of subsequent witnesses was purely incidental to material testimony in the case. No objections were made thereto, and we may assume that the jury well understood the purpose of the evidence, and that it was received and considered under the admonitory instructions of the court.

The appellant also complains of a fatal variance between the government's proof and the allegation of the indictment. The indictment charged the appellant with having transported the stolen automobile in interstate commerce from near Scott City, Kansas, to Englewood, Colorado. There was evidence that the black 1949 Chevrolet was stolen from a quonset barn about eight miles from Scott City, Kansas, on or before August 5, 1959; that the appellant was seen in possession of an automobile of this description in Montana about three days later; and that he was apprehended in possession of the stolen automobile in Englewood, Colorado on August 17, 1959. The court correctly instructed the jury that "Possession in one state of property recently stolen in another state, if not satisfactorily explained, is a circumstance from which the

jury might reasonably infer and find in the light of the surrounding circumstances that the person in possession not only knew it to be stolen property, but also transported it or caused it to be transported in interstate commerce." The appellant does not complain of the correctness of this instruction. And see Dunlop v. United States, 165 U.S. 486, 502, 17 S.Ct. 375, 41 L.Ed. 799; Seefeldt v. United States, 10 Cir., 183 F.2d 713. He contends, however, that this permissible inference of guilt is at fatal variance with the testimony of the special agent of the Federal Bureau of Investigation, who recited the appellant's statement to him to the effect that the appellant purchased the automobile from one of his fellow escapees in Wyoming for the sum of $75, and thereafter transported it from Wyoming to Colorado. From this the appellant argues that the government's proof shows at most that appellant transported a stolen automobile from Montana or Wyoming to Colorado, and that such evidence rebuts any permissible inference that he first possessed the stolen automobile in Kansas and transported it from there to either Montana or Wyoming.

■■ In the first place, the agent's mere recital of the appellant's statement to him was not binding upon the government, insofar as the allegations of the indictment were concerned. At most, it was evidence which the jury could believe or disbelieve in its discretion. Moreover, the fellow-escapee denied having sold the automobile to appellant, or of having signed a slip of paper, purporting to be a bill of sale for it. He stated that when he last saw the appellant in Montana, he was driving away in the 1949 black Chevrolet. A handwriting expert testified that the signature on the purported bill of sale was not that of the purported seller. It is thus plain that the government's proof did not vary the allegations in the indictment or tend to overcome the permissible inference of unlawful possession of the automobile.

The more troublesome problem is appellant's contention to the effect that the court should have directed an acquittal on the record evidence of his mental illness. The underlying facts of record are to the effect that while the accused was confined in the county jail of Arapahoe County, Colorado, he was examined on September 16 and 25, 1959, by Dr. J. P. Hilton, a psychiatrist and member of a county medical commission. Pursuant to this examination, the County Court of Arapahoe County entered an order on October 9, 1959, adjudicating the accused "mentally ill" and committing him to the Colorado State Hospital "to be confined, treated and cared for as the law directs until discharged according to law." The order recited that commitment was necessitated by "chronic alcoholism with seven or eight brief periods of hallucination on withdrawal of alcohol." The record does not indicate when the accused was discharged from the hospital, but it does show that on December 23, 1959, after the return of this indictment on December 17, the court appointed Dr. Robert R. Cohen "as a psychiatrist to examine the said defendant to determine his mental condition." There is no record of Dr. Cohen's findings or diagnosis.

On January 19, 1960, apparently after the case had been set for trial on the following February 10, the appellant, through his court-appointed counsel, moved for a subpoena to the Clerk of the Arapahoe County Court for production of the records of the proceedings wherein he was "declared mentally incompetent, ordered committed to the Colorado State Hospital in September 1959", including a copy of the order of commitment. On the same day, the accused moved for the appointment of a psychiatrist to assist him as an expert witness in his defense on the grounds that the testimony of a psychiatrist was material to his defense, and that he could not safely proceed to trial without such witness. On the following January 25, the accused moved for the appointment of Dr. John P. Hilton to assist him in his defense, stating that he was not capable of forming the necessary intent required in the offense charged.

The trial court promptly entered a formal order for the issuance of the subpoenas and the production of the requested records. On the next day, however, the court amended its order to appoint Dr. Hilton "as an expert witness for the benefit of the court and jury."

On trial of the case, Dr. Hilton, appearing for the defense, testified concerning his examinations of the accused in the Arapahoe County jail, and his findings to the effect that he was "mentally and emotionally ill" due to chronic alcoholism over a period of years, and his recommendation that the accused be placed in the State Hospital for treatment until the doctors at the State Hospital believed "he was well enough to be on parole." While not objecting to the Doctor's testimony, the government did object to the admission of the formal order of adjudication and commitment as irrelevant and immaterial to the question of sanity of the accused, "that is, the ability to know the difference between right and wrong and ability to adhere to the right." The government chose to stand on this premise and offered no evidence touching the sanity of the accused.

■ Consistently with its position in the trial court, the government takes the position here that the medical evidence, including the formal adjudication and commitment, is insufficient to overcome the presumption of sanity and criminal responsibility which attends everyone charged with a criminal offense. The presumption of sanity is a rule of law which stands in the place of evidence, in the absence of evidence to the contrary. When, however, evidence of insanity is produced, from whatever source, the presumption of sanity disappears, and the mental capacity of the accused to commit the crime becomes an essential element to be proven by competent evidence beyond a reasonable doubt. Davis v. United States, 160 U.S. 469, 16 S.Ct. 353, 40 L.Ed. 499; British American Assurance Co. v. Bowen, 10 Cir., 134 F.2d 256; McKenzie v. United States, 10 Cir., 266 F.2d 524; Kitchens v. United States, 10 Cir.,

272 F.2d 757; Tatum v. United States, 88 U.S.App.D.C. 386, 190 F.2d 612; Williams v. United States, 102 U.S.App.D.C. 51, 250 F.2d 19; Carter v. United States, 102 U.S.App.D.C. 227, 252 F.2d 608; Durham v. United States, 94 U.S.App. D.C. 228, 214 F.2d 862, 45 A.L.R.2d 1430.

Recognizing the force of this rule, and the legal effect of the evidence of mental illness, the court instructed the jury that an issue of insanity had been raised in the case, and the sanity of the accused had therefore become one of the elements of the offense charged, which the government must prove beyond a reasonable doubt. The jury was further told, however, that if it "believes that there has been evidence of insanity of the defendant introduced in evidence, whether on the part of the government or on the part of the defense which leaves in your mind a reasonable doubt * * * as to the sanity of the defendant at the time of the commission of the crime, the defendant then cannot be held accountable for the crime." The court then proceeded to give the jury the right and wrong, plus irresistible impulse test for criminal responsibility.

■ The jury was thus instructed as a matter of law that the issue of insanity had been raised as one of the elements of the offense charged, and they were then left to determine for themselves as a matter of fact whether "there had been evidence of insanity of the defendant introduced in evidence." We think the question of the sufficiency of the evidence to dissipate the presumption of sanity and raise the issue of insanity is one of law for the court to decide in the first instance. If the evidence of "mental illness" is deemed legally sufficient to raise the issue of insanity, the appellant was entitled to a directed verdict of acquittal, for the government offered no evidence of his sanity, hence no factual issue for the jury.

■ We agree with Judge Bazelon in Tatum v. United States, supra, that "any attempt to formulate a quantitative meas-

ure of the amount of evidence necessary to raise an issue [insanity] can produce no more than an illusory definiteness." 190 F.2d at page 615. In that case the court seemed to think that "some evidence" relevant to the issue of insanity is sufficient to raise the issue—something less probative than that which is " 'sufficient to create a reasonable doubt' "—lest the presumption of sanity be given greater effect than was intended in the Davis case. Id. See also Durham v. United States, supra; Williams v. United States, supra. Other courts require the accused to overcome the presumption of sanity by evidence reasonably tending to show that at the time of the commission of the crime, the accused was criminally irresponsible. State v. Roy, 40 N.M. 397, 60 P.2d 646, 650, 110 A.L.R. 1; Kregger v. Bannan, D.C., 170 F.Supp. 845. While a diagnosis of mental illness, even necessitating confinement in a mental institution, may not have the probative effect of proving mental irresponsibility by whatever test may be applied—whether Durham or McNaghten—at the same time, no one can doubt that confinement in a mental institution upon an adjudication of mental illness is sufficient to generate in the minds of all of us a doubt sufficient to provoke inquiry. And this is so whether the mental illness be caused by chronic alcoholism or some other mental disorder. As Chief Judge Prettyman has said, "Mental illnesses are of many sorts and have many characteristics. They, like physical illnesses, are the subject matter of medical science. They differ widely in origin, in characteristics, and in their effects on a person's mental processes, his abilities, and his behavior. To make a reasonable inference concerning the relationship between a disease and a certain act, the trier of the facts must be informed with some particularity. This must be done by testimony. Unexplained medical labels— schizophrenia, paranoia, psychosis, neurosis, psychopathy—are not enough. De-

scription and explanation of the origin, development and manifestations of the alleged disease are the chief functions of the expert witness." Carter v. United States, 102 U.S.App.D.C. 227, 252 F.2d 608, 617. In Frame v. Hudspeth, 10 Cir., 109 F.2d 356, this court was confronted with the question whether a general adjudication of insanity after the criminal act, was sufficient to raise the question of insanity and impose upon the court the duty to affirmatively inquire concerning mental capacity of the accused to enter a plea of guilty. The majority thought that the inquiry conducted by the court at the bar was sufficient. But the case was reversed upon consent of the Solicitor General, and the cause remanded for the "purpose of making a full inquiry into the mental status of the petitioner at the time he entered the pleas of guilty." 309 U.S. 632, 60 S.Ct. 712, 84 L.Ed. 989.

■ Viewed in this light, it becomes reasonably clear that a diagnosis of mental illness necessitating commitment to a mental institution a little more than a month after the commission of the crime, is legally sufficient to raise the issue of mental capacity to commit the offense. In any event, we hold that the proof was sufficient to dissipate the presumption of sanity and to inject the issue of insanity as an element of the offense charged. In the absence of competent evidence of criminal responsibility, the accused was entitled to a directed verdict of acquittal.

■ The appellant did not move for a directed verdict or object to the submission of the issue of criminal responsibility to the jury. And, ordinarily we would not notice the error sui sponte. In cases like these, however, where the mental capacity of the accused is in issue, it is our duty to notice and correct the error. Tatum v. United States, 88 U.S. App.D.C. 386, 190 F.2d 612.

The case is reversed and the cause is remanded with directions to dismiss.