**Billy Jack PHILLIPS, Appellant,**

v.

**The UNITED STATES of America,**
**Appellee.**

**No. 6858.**

United States Court of Appeals
Tenth Circuit.

Nov. 6, 1962.

H. Dale Cook, of Rinehart, Morrison & Cook, Oklahoma City, Okl., for appellant.

Robert M. Green, Asst. U. S. Atty. (Newell A. George, U. S. Atty., with him on brief), for appellee.

Before MURRAH, Chief Judge, and PICKETT, LEWIS, BREITENSTEIN and SETH, Circuit Judges.

MURRAH, Chief Judge.

This appeal in forma pauperis is from a judgment and sentence on a jury verdict for the interstate transportation of a stolen vehicle, in violation of Title 18 U.S.C. § 2312.

At the outset, the defendant pleaded not guilty by reason of insanity, i. e., criminal irresponsibility for the offense charged. The initial question is whether the evidence of mental illness was sufficient to dissipate the legal presumption of sanity, and cast upon the government the burden to prove criminal responsibility, as an essential element of the offense, beyond a reasonable doubt. See Davis v. United States, 160 U.S. 469, 16 S.Ct. 353, 40 L.Ed. 499. Under the established rule in this Circuit, any relevant evidence of mental illness before or after the offense is sufficient to dissipate the legal presumption and cast the conventional burden on the government. Coffman v. United States, 10 Cir., 290 F. 2d 212; Fitts v. United States, 10 Cir., 284 F.2d 108; McKenzie v. United States, 10 Cir., 266 F.2d 524; Kitchens v. United States, 10 Cir., 272 F.2d 757. See also Tatum v. United States, 88 U.S. App.D.C. 386, 190 F.2d 612; Carter v. United States, 102 U.S.App.D.C. 227, 252 F.2d 608.

Upon arraignment, counsel moved for a mental examination to determine whether the accused understood the nature of the charge against him, and could assist in his defense. Inquiry by the Court disclosed that the accused had a long history of mental illness and institutional care, and had been discharged from the Navy about sixteen years previously as a schizophrenic. The Court thereupon ordered the defendant committed, pursuant to Title 18 U.S.C. § 4244, for psychiatric examination and evaluation. Following the examination and report, the defendant appeared in person and with counsel for formal arraignment. He waived indictment, consented to the charge by information, and pleaded not guilty by reason of insanity. At the same time, the Court advised him that the report, submitted to the Court by the examining psychiatrist, indicated "that you are mentally competent to the extent that you understand the nature of the charge against you and that you are able to cooperate with counsel." But the Court was careful to advise the accused that the finding of competency in no way prejudiced his plea of insanity as a defense to the crime charged.

Thereafter, the accused moved pro se to dismiss the information. Upon hearing of the motion, the Court was informed that the accused would assert the Durham test for criminal responsibility (i. e., Durham v. United States, 94 U. S.App.D.C. 228, 214 F.2d 862, 45 A.L. R.2d 1430); and, that he wished certain hospital records and doctors subpoenaed to assist him at the trial. He was advised that any relevant records or witnesses would be provided.

Upon trial, the defense produced five witnesses: the defendant; Dr. Robert Carnehan, Psychiatrist of the State Hospital at Little Rock, Arkansas; Dr. Thomas Clanon, Assistant Chief of Psychiatry at the Federal Prison Hospital at Springfield, Missouri, who had made the examination and report pursuant to Court order; Paul Hillman, defendant's brother-in-law; and Nita Hillman, defendant's sister. Each witness testified that the defendant had a long and continuous history of mental illness.

Dr. Carnehan testified that he first examined the accused in 1954, when he was sent to the State Hospital for observation in connection with a criminal charge of grand larceny, then pending against him. He testified that at that time, the defendant's diagnosis was antisocial reaction. He further testified that

at various times after that, the accused was sent to the hospital for observation, mostly in connection with criminal charges pending against him, including forging and uttering, grand larceny, and burglary. Each time the patient's condition had deteriorated and the final diagnosis was schizophrenic chronic, undifferentiated type.

Dr. Clanon testified that he had first examined the accused about two years previously, in August of 1959, also in connection with pending criminal charges. The diagnosis at that time was schizophrenic reaction, undifferentiated type, chronic. The next time Dr. Clanon observed him was in October of 1960, again in connection with a criminal charge. The accused was released from the hospital in January, 1961, prior to the commission of this alleged offense on March 8, 1961. The diagnosis at the time of his release was the same as in 1959. Nita Hillman, defendant's sister, testified that the accused had come to live with her and her husband in January, 1961, after he was discharged from the hospital at Springfield. She testified that at that time, he was in the best condition that she had seen him in since he was discharged from the Navy; that soon thereafter, he became extremely nervous, had trouble sleeping and was unhappy because he was unable to find a job and help support himself. She further testified that on two different occasions she had signed papers for his commitment, and that each time, he was committed to Veterans Administration Hospitals.[1] The brother-in-law's testimony was substantially the same.

We think this evidence entirely sufficient to cast upon the government the burden of proving criminal responsibility for the offense charged, beyond a reasonable doubt. The government offered no evidence, upon any theory, of the defendant's criminal responsibility. The only evidence bearing upon this crucial question came from examination of the defendant's witnesses. In answer to the direct question, whether at the time of the offense "defendant knew right from wrong," Dr. Carnehan stated that from his casual observation of the accused in February, 1961 (before the offense on March 8, 1961) "it would be impossible for me to say whether at that time he was in complete remission. I didn't do an examination, but he did seem very good for him at that time." He further testified that at the time the accused left his mental hospital in Little Rock, Arkansas in August of 1960, he "did not feel that he (the defendant) was in remission at all." The accused

1. Billy Jack Phillips requested subpoenas for the records from the following hospitals:
  Medical Center for Federal Prisoners, Springfield, Mo.
  V.A. Hospital, North Little Rock, Arkansas.
  V.A. Hospital, Mental Hygiene Clinic, Little Rock, Ark.
  V.A. Hospital, Palo Alto, California
  V.A. Hospital, Oakland, California
  V.A. Hospital, Los Angeles, California
  State Hospital, Little Rock, Arkansas
  State Hospital, Napa, California
  State Hospital, Auburn, California
  State Hospital, Stockton, California
  State Hospital, San Jose, California
  County Hospital, Fairfield, California
  Lakefront Naval Hospital, New Orleans, Louisiana
  U.S. Public Health Svc. Hospital, Ft. Worth, Texas
The record does not indicate whether he was confined in any of these institutions, but does indicate that he was committed for mental treatment in the following proceedings:
  June, 1955—Probate Court of Pulaski County, Ark.
  May, 1958—Probate Court of Pulaski County, Ark.
  Dec., 1958—Circuit Court of Pulaski County, Ark.
The accused testified that he had been committed, as mentally incompetent in the following jurisdictions:
  Superior Court, Redwood City, California
  Superior Court, Marysville, California
  Superior Court, Fairfield County, California
  Circuit Court, Cleburne County, Arkansas,
but the record does not indicate the final disposition in any of these cases, or the reasons for his release.

was sent to the Veterans Administration Hospital in North Little Rock for further treatment.

Dr. Clanon, who examined the accused at the Federal Hospital, for the sole purpose of determining whether he was competent to stand trial, was asked on cross-examination simply whether, in his opinion, the accused "knew right from wrong?" He answered that because the accused's illness was subject to fluctuation, "I wouldn't feel able to give an opinion as to competency a couple of months earlier." He did state that he first saw the defendant in 1959 and that "practically all of the time that I have had him under observation and treatment, he has known the difference between right and wrong."

Assuming arguendo that the legal test of criminal responsibility is simply whether, at the time of the commission of the act, the defendant knew the difference between right and wrong, we do not think this modicum of testimony sufficient to sustain the burden of proving criminal responsibility for the offense charged. We conclude that the evidence was wholly insufficient to make out a case for the jury.

■■■■ The defendant did not move for a directed verdict of acquittal at the conclusion of the evidence, nor did he object to the submission of the issue of criminal responsibility to the jury.[2] But even so, we may notice the insufficiency of the evidence and direct a verdict of dismissal for failure to make out a case. See Fitts v. United States, supra; Kitchens v. United States, supra. Since, however, the defendant has moved for a new trial, the case is open for such disposition here as seems appropriate and just under the circumstances. See Bryan v. United States, 338 U.S. 552, 70 S.Ct. 317, 94 L.Ed. 335; Sapir v. United States, 348 U.S. 373, 75 S.Ct. 422, 99 L.Ed. 426; Thomas v. United States, 10 Cir., 239 F.2d 7; Douglas v. United States, 99 U.S.App.D.C. 232, 239 F.2d 52. In the circumstances of this case, we deem a new trial inappropriate. As we have seen, the only issue was the criminal responsibility of the accused. Indeed, the case was submitted to the jury on the issue of "insanity at the time of the alleged offense." But, as we have also seen, the government offered no evidence or testimony bearing on the mental competency of the accused. Unlike Thomas and Douglas, supra, there is nothing in the record to indicate that relevant testimony is available or would be adduced upon a new trial.

The case is accordingly reversed, with directions to dismiss the charge.

2. The Court was requested to instruct the jury in accordance with Currens v. United States, 3 Cir., 290 F.2d 751, to the effect that, "a person is not responsible for criminal conduct if, at the time of such conduct, as the result of mental disease or defect, he lacks substantial capacity to conform his conduct to the requirements of the law. The terms 'mental disease' or 'defect' do not include abnormality manifested only by repeated criminal or otherwise anti-social conduct." The trial Court refused the request and instead instructed the jury in accordance with the presently prevailing right-wrong plus irresistible impulse test, to the effect that the accused is excused of criminal responsibility for his acts if, by reason of his mental condition, he was incapable of distinguishing between right and wrong, or incapable of knowing the nature of his act, or if conscious of the nature of the act and able to distinguish between right and wrong, was unable to control his will. In view of the disposition we make of the case, we have no occasion to re-examine the presently prevailing rule for criminal responsibility in this Circuit. See Coffman v. United States, 10 Cir., 290 F.2d 212.