**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Russell Eugene JACOBS, Defendant-Appellant.**

No. 72–1258.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Sept. 21, 1972.

Decided Feb. 12, 1973.

---

**462**

Edward H. Funston, Asst. U. S. Atty. (Robert J. Roth, U. S. Atty., and Glen S. Kelly, Asst. U. S. Atty., on the brief), for plaintiff-appellee.

James W. Creamer, Jr., Denver, Colo. (Flowers & Creamer, Denver, Colo., on the brief), for defendant-appellant.

Before PHILLIPS, BARRETT and DOYLE, Circuit Judges.

ORIE L. PHILLIPS, Circuit Judge.

An indictment was returned in the United States District Court for the District of Kansas against Jacobs, charging that he wilfully, unlawfully and feloniously transported and caused to be transported in interstate commerce a stolen motor vehicle, to wit, a 1960 Austin Healey, from the State of Missouri to the State of Kansas, knowing said motor vehicle to have been stolen, in violation of 18 U.S.C. § 2312.

He entered a plea of not guilty and also a plea of not guilty by reason of insanity. He was tried, convicted, and sentenced, and has appealed.

The testimony of the Government clearly established these facts:

On April 15, 1972, Michael Bonderer and Jacobs went together to two different taverns in Kansas City, Missouri, where each of them drank intoxicating liquor. They traveled from the first to the second tavern in a 1960 Austin Healey owned by Bonderer. While they were at the second tavern, Jacobs left at two different times. After Jacobs left the second time, Bonderer discovered that his automobile was not at the parking lot where they left it. Bonderer waited two hours after discovering that his car was gone before reporting that fact to the police, because he thought Jacobs had taken it and he knew Jacobs had been drinking and did not want to get him into trouble.

Bonderer had lost the keys to his automobile and had "hot wired" it so he could activate the ignition. Bonderer learned from various sources that Jacobs had taken his automobile from the parking lot.

Early on April 16, 1971, Bonderer learned that his automobile had been involved in a highway accident, and was stored at a service station in Leavenworth, Kansas.

John T. Stevenson was a relative of Jacobs, but prior to April 15, 1971, had not seen him for several years. On that date, Jacobs came to Stevenson's home in Kansas City, Missouri. When he arrived, he was driving an Austin Healey and told Stevenson he had bought it from a friend. Jacobs remained at the Stevenson home for several hours, and late in the afternoon of April 15, 1971, left with one Gary A. McKinney, whom he had met at Stevenson's home. Jacobs and McKinney left in what McKinney described as a "sports car," which Jacobs was driving. They purchased one or two six-packs of beer and drove aimlessly around Kansas City, Missouri, while consuming the beer. They then proceeded to McKinney's home, where they stopped for a short time, and then left in the automobile, which Jacobs had been driving, to go to Colorado. They entered the Kansas Turnpike about 10 p. m. They were driving at a high rate of speed and became involved in a highway accident in Kansas. When that happened, Jacobs told McKinney to run, because the car was "hot." In certain channels, "hot" is a term meaning "stolen." Before the accident, Jacobs had told McKinney that he had borrowed the car from a friend.

The Kansas State Patrolman who went to the scene of the accident on April 15, 1971, was able to identify Bonderer's Austin Healey automobile as one of the cars involved in the accident, from numbers and information he had theretofore received.

Jacobs testified that early in the morning of April 15, 1971, he went to a tavern and began drinking; that sometime thereafter he met Bonderer at the tavern and they had "several drinks" and then drove in Bonderer's Austin Healey to another tavern; that he noticed Bonderer did not use a key to start the automobile, but touched two wires together to activate the ignition; that after several drinks at the second tavern he requested and received permission from Bonderer to use the Austin Healey to run an errand; that he returned to the tavern and thereafter received permission from Bonderer to use the Austin Healey a second time; that he then proceeded to the Stevenson home, where he met McKinney; that after drinking at the Stevenson home he and McKinney left in the Austin Healey, picked up two six-packs of beer, and proceeded to McKinney's home; that he then intended to return the Austin Healey to Bonderer, but he had consumed so much beer that he was not certain of his actions; that after leaving the McKinney home, McKinney said, "You better let me drive"; that he remembered that they stopped for gas shortly after McKinney began driving, which was about 7:30 p. m., April 15, 1971; that he did not remember driving the car after leaving McKinney's home, nor did he remember crossing the state line into Kansas; that he next thing he did remember was waking up in a barn somewhere in Kansas in the vicinity of the Kansas Turnpike; that he returned to Kansas City, Missouri, and was informed that the police were looking for him; that because he had a previous record he left Kansas City; that he spent several months traveling in the South Central region of the United States, where he stayed with various friends; that he finally went to Miami, Florida, and was arrested on a traffic violation on August 6, 1971; that he had periods when he had a complete lapse of memory, and that those lapses usually occurred after he had been drinking.

The court advised the jury that

" * * * as part of the Defendant's evidence, it has been stipulated and agreed by the parties and with the Defendant's consent, that if witnesses by the name of Pat Clark, Bryan Strong and William Dodd were present, they would testify that they have been acquainted with the Defendant since his arrival in Miami, Florida, sometime around the middle

to latter part of April of 1971, that they have been in his company on numerous occasions when he was intoxicated, and that on several of these occasions he was able to function physically but that he was unable to control his conduct."

In his brief, Jacobs stated that the sole issue on his appeal was whether the court erred in refusing to give the jury an instruction on insanity.

The court did instruct the jury on voluntary intoxication, as follows:

"Now, although intoxication or drunkenness alone will never provide a legal excuse for the commission of a crime, the fact that a person may have been intoxicated at the time of the commission of a crime may negate the existence of a specific intent, so evidence that a defendant acted or failed to act while in a state of intoxication is to be considered in determining whether or not the defendant acted or failed to act with specific intent as charged.

"If the evidence in the case leaves the jury with a reasonable doubt whether, because of the degree of his intoxication, the mind of the accused was capable of forming or did form specific intent to commit the crime charged, the jury should acquit the accused. The jury will always bear in mind that the law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence."

Jacobs offered no testimony that when he drank intoxicating liquor or when he drank it to the extent of being intoxicated, he did not do so voluntarily, nor that the drinking he did on April 15, 1971, was in any respect involuntary.

McKinney testified that when they left his home it was their intention to drive to Colorado in the Austin Healey, and that immediately after the accident Jacobs warned him to run, because the Austin Healey was a stolen automobile.

Jacobs admitted that he remembered leaving the McKinney home; that McKinney was driving; and that his lapse of memory commenced thereafter, when they stopped to get gas.

Moreover, the testimony of McKinney shows that when the accident occurred, Jacobs was in full command of his faculties, because he immediately warned McKinney that the Austin Healey was a stolen automobile and told him to run. Jacobs did not deny that when they left the McKinney home, they intended to drive in the Austin Healey to Colorado.

█ It is well settled that there is a presumption that a person is sane.[1] However, such a presumption is one of law, not an inference of fact. In a criminal case, when some evidence of insanity is introduced from any source, the presumption of sanity disappears, and the burden is upon the prosecution to prove to the satisfaction of the jury beyond a reasonable doubt that the defendant was sane when he committed the offense charged.[2]

Jacobs's own evidence was to the effect that after he drank intoxicating liquor he sometimes experienced lapses of memory, and that he did so in the instant case. However, it is clear that the intent to travel from McKinney's home to Colorado in the Austin Healey was formed while Jacobs still had full use of his faculties, and the jury were fully warranted in believing that the intoxicating liquor which Jacobs drank on April 15, 1971, was drunk voluntarily. Jacobs at no time made any claim that any of the drinking he had done was done involuntarily. Moreover, McKinney's evidence showed that after they had traveled from McKinney's home into Kansas and when they were

1. Fitts v. United States, 10 Cir., 284 F.2d 108, 112.

2. Hartford v. United States, 9 Cir., 362 F.2d 63, 64, cert. denied, 385 U.S. 883, 87 S.Ct. 174, 17 L.Ed.2d 110, rehearing denied, 385. U.S. 954, 87 S.Ct. 328, 17 L.Ed.2d 233; Davis v. United States, 10 Cir., 364 F.2d 572, 574; United States v. Ingman, 9 Cir., 426 F.2d 973, 976; Brock v. United States, 5 Cir., 387 F.2d 254, 257.

involved in the highway accident, Jacobs was fully aware of what he had done and was not suffering from any lapse of memory, because he told McKinney to run because the car was "hot," meaning that it was stolen.

It is well settled that voluntary drunkenness is not a defense to a criminal act, except where a specific intent or knowledge is an element of the offense, when drunkenness may be shown to prove mental incapacity to form a specific intent.[3]

The court fully instructed the jury with respect to the admissibility of evidence of drunkenness, in order to show that the defendant was incapable of forming a specific intent. In this case, it is obvious that the jury did not believe Jacobs was so intoxicated that he was not capable of forming a specific intent to do the acts which constituted the offense charged, and that it did believe that he specifically intended to commit the offense.

The judgment is affirmed.

---

3. Proctor v. United States, 85 U.S.App. D.C. 341, 177 F.2d 656, 657; Kane v. United States, 9 Cir., 399 F.2d 730, 736, cert. denied 393 U.S. 1057, 89 S.Ct. 698, 21 L.Ed.2d 699.