**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Donald F. BETTENHAUSEN and Bernice A. Bettenhausen, Defendants-Appellants.**

**Nos. 73–1426, 73–1427.**

United States Court of Appeals, Tenth Circuit.

July 1, 1974.

1224

Robert J. Roth, U. S. Atty., Wichita, Kan., for plaintiff-appellee.

Charles W. Harris, Wichita, Kan. (Paul M. Buchanan of Weigand, Curfman, Brainerd, Harris & Kaufman, Wichita, Kan., on the brief), for defendants-appellants.

Before CLARK,* Associate Justice, and HILL and HOLLOWAY, Circuit Judges.

HOLLOWAY, Circuit Judge.

Donald F. and Bernice A. Bettenhausen, husband and wife, appeal their convictions under a multiple count indictment of making an income tax return containing written declarations not believed to be true, and making and using false writings, in the form of altered checks and other documents, to substantiate improper deductions to the Internal Revenue Service. Mr. Bettenhausen was convicted of filing such returns containing untrue declarations for 1966, 1967 and 1968, in violation of 26 U.S.C.A. § 7206(1) and 18 U.S.C.A. § 2. Mrs. Bettenhausen was convicted of the same offense by their joint return for 1968 only. Both were convicted on eight counts under 18 U.S.C.A. § 1001 and 18 U.S.C.A. § 2 for making and using of false writings. The defendants were each given three year concurrent sentences on all convictions.

Numerous propositions are seriously pressed as grounds for reversal. It is convenient to discuss the facts separately in treating these arguments.

### 1. *Venue of the offenses under 26 U.S.C.A. § 7206(1)*

Defendants object that venue was not properly laid in the District of Kansas for the offense of making the returns in violation of 26 U.S.C.A. § 7206(1). They say that there could be no offense without filing of a return and that since this occurred at the Internal Revenue Service Center at Austin, Texas, venue was improper in the District of Kansas. Reliance is placed on the constitutional guaranty of the Sixth Amendment, and Travis v. United States, 364 U.S. 631, 81 S.Ct. 358, 5 L. Ed.2d 340 and United States v. Lombardo, 241 U.S. 73, and similar authorities.

Article 3, Section 2 of the Constitution affords the fundamental guaranty that trial of all crimes " . . . shall be held in the State where the said Crimes shall have been committed . . . " The Sixth Amendment reinforces the guaranty, providing for trial " . . . by an impartial jury of the State and district wherein the crime shall have been committed . . . ." Carrying out the constitutional mandate, Rule 18 F.R.Crim.P. provides that prosecution " . . . shall be had in a district in which the offense was committed."

We are persuaded by the reasoning in United States v. Hagan, 306 F.Supp. 620 (D.Md.). The court there said it might be true, as argued, that the offense was not complete and could not have been prosecuted if the return had never been filed. But the court pointed out that the key verbs defining the offense under 26 U.S.C.A. § 7206(1) are "makes" and "subscribes." Id. at 621–622; see also United States v. Slutsky, 487 F.2d 832, 839 (2d Cir.), cert. denied, 416 U.S. 937, 94 S.Ct. 1937, 40 L.Ed.2d 287. Therefore, under Rule 18, it was held that the defendant could be prosecuted in the district where the return was made and subscribed.

We feel that Travis v. United States, 364 U.S. 631, 81 S.Ct. 358, 5 L.Ed.2d 340, and United States v. Lombardo, 241 U.S. 73, 36 S.Ct. 508, 60 L.Ed. 897, do not support the objection to venue here. They were decided under statutes requiring filing with a particular Government agency, which was stressed. See 364 U.S. at 632, n. 2, 81 S.Ct. 358; 241 U.S. at 76, 78, 36 S.Ct. 508; cf. United States v. Bithoney, 472 F.2d 16 (2d Cir.), cert. denied, 412 U.S. 938, 93 S.Ct. 2771, 37 L.Ed.2d 397.

Here the returns were made and subscribed in the District of Kansas, although mailed to Austin as required. We feel venue in Kansas was proper un-

---

* Associate Justice, Supreme Court of the United States, Retired, sitting by designation.

der Rule 18 and in accord with the constitutional guaranties.

### 2. *Refusal of the trial court to submit the issue of Mr. Bettenhausen's sanity*

Mr. Bettenhausen argues that reversible error occurred when the trial court refused to submit the issue of his competence to commit the offenses and charged the jury that the issue was not available and should not be considered by the jury (Tr. 1366–67). The Government says that there was no proof offered during the retrial which raised the sanity issue and that the prosecution was entitled to rely on the presumption of sanity. Thus it contends the trial court's instruction was proper.

These convictions occurred on a retrial following an earlier mistrial declared in February, 1972, when the jury was unable to agree. Before the first trial Mr. Bettenhausen's counsel gave notice at two omnibus hearings in 1971 that insanity would be a defense. Medical examinations arranged by the defense followed. In November, 1971, the Government requested an examination to determine Mr. Bettenhausen's competence to stand trial. In November the trial court conducted a hearing at the Government's request and determined that Mr. Bettenhausen was competent to stand trial. The defense did not then, and does not now, assert that Mr. Bettenhausen was not competent to stand trial at either trial.

The first trial followed in February, 1972. At that trial a psychiatrist and a psychologist testified for the defense that Mr. Bettenhausen had not been competent to commit the offenses. Among others the sanity issue was submitted to the jury. They were unable to agree and a mistrial was declared.

In March the Government requested that Mr. Bettenhausen be examined by a psychiatrist. An examination was ordered in November, 1972, and conducted by three physicians, one being a psychiatrist, for the Government. In the Government's opening statement at the second trial in December, 1972, the insanity issue was discussed. And during the presentation of its case the Government developed lay testimony attempting to show that Mr. Bettenhausen was competent.

In cross-examination Mr. Bettenhausen's superior at Boeing, Mr. Robbins, testified that about the middle of 1971 he first learned that Mr. Bettenhausen had come under the care of a psychiatrist, and that he knew he was away from work, hospitalized and under the care of a psychiatrist (Tr. 1129–30). The offenses had allegedly occurred at various dates from April, 1967, into May, 1969. The defense cross-examined repeatedly on the issue to attempt to develop proof of insanity, but no other evidence of substance was obtained by cross-examination.

From these and other circumstances the defense argues that from the outset of the second trial the burden was on the Government to prove Mr. Bettenhausen's sanity. The defense says that the Government has the burden of proving the defendant's sanity when evidence of insanity is produced, from whatever source. And it is argued that once the Government has notice of the mental condition of the accused, it has the burden of proof in the first instance as to the sanity of the accused. Reliance is placed primarily on several Tenth Circuit cases, which we have considered,[1] and a ruling by the trial judge who tried the first case.[2]

1. Defendant relies on United States v. Jacobs, 473 F.2d 461 (10th Cir.), cert. denied, 412 U.S. 920, 93 S.Ct. 2740, 37 L.Ed.2d 147; United States v. Whittenburg, 462 F.2d 581 (10th Cir.); Wolcott v. United States, 407 F.2d 1149 (10th Cir.), cert. denied, 396 U.S. 879, 90 S.Ct. 156, 24 L.Ed.2d 137; Davis v. United States, 364 F.2d 572 (10th Cir.); Otney v. United States, 340 F.2d 696 (10th Cir.); and Phillips v. United States, 311 F.2d 204 (10th Cir.) (en banc); and similar cases.

2. The first trial was conducted by Chief Judge Wesley E. Brown and the second trial

■ As to mental responsibility to plead or stand trial—which as stated is not at issue here—the trial court's duty flows from constitutional requirements of due process, Pate v. Robinson, 383 U. S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 as well as from 18 U.S.C.A. § 4244. And if any information coming to the attention of the court raises a bona fide doubt of the defendant's competency to waive his constitutional rights or plead or to stand trial, it is the inescapable duty of the court to conduct a due process hearing to determine competency and to make appropriate findings. Wolcott v. United States, 407 F.2d 1149, 1151 (10th Cir.) (en banc), cert. denied, 396 U.S. 879, 90 S.Ct. 156, 24 L.Ed.2d 137.

■■ Our case concerns the competency to commit the offense charged, and specifically when and how it becomes an issue.[3] It has long been settled that the law presumes that everyone charged with a crime is sane, and the law thus supplies in the first instance the required proof of capacity to commit crime. Davis v. United States, 160 U.S. 469, 486, 16 S.Ct. 353, 40 L.Ed. 499; United States v. Jacobs, 473 F.2d 461, 464 (10th Cir.), cert. denied, 396 U.S. 879, 90 S.Ct. 156, 24 L.Ed.2d 137. When the presumption of sanity is dissipated, the mental capacity of the accused to commit the crime becomes an essential element of the offense to be proved by the prosecution with competent evidence beyond a reasonable doubt. Fitts v. United States, 284 F.2d 108, 112 (10th Cir.). Our case focuses on when and how this presumption of sanity is dissipated.

■ In Wolcott v. United States, supra—which dealt with competence to stand trial—the court also referred to competence to commit the offense, saying that "[i]f the defendant's mental re-

sponsibility for the offense is in any way put in issue, the judge must determine whether the legal presumption of criminal responsibility has been dissipated." 407 F.2d at 1150. This determination as to whether sufficient evidence of insanity has been introduced to rebut the sanity presumption is to be made by the trial judge, and not by the jury. Davis v. United States, 364 F.2d 572, 574 (10th Cir.); Otney v. United States, 340 F.2d 696 (10th Cir.); Fitts v. United States, 284 F.2d 108 (10th Cir.).

Here the defense argues that the determination at the second trial, as at the first, should have been that the Government had the burden of proving sanity in its case in chief because of facts outlined above and similar circumstances, and notice given about the issue. Reliance is placed on the court's statements in Otney v. United States, supra, 340 F. 2d at 698:

Being thus aware of appellant's claim of mental incompetency, the Government initially undertook the burden of proving his criminal responsibility as an essential element of the offense charged.

It is true that in *Otney* the Government undertook the burden of proof of sanity, following an examination under 18 U.S.C.A. § 4244 and the granting of a defense motion for examination by a psychiatrist who was to testify for the defense at trial. We do not, however, feel that *Otney* in any way held that the Government was required to undertake the burden of proof. The observation merely recited the Government's undertaking of the burden in that case.

We have not previously decided the procedural question raised. However we feel that our earlier decisions point the

by Judge Frank G. Theis. The pertinent portions of Chief Judge Brown's ruling appear in note 4, infra.

3. This Circuit's standard of competence to commit the offense charged is clear—that the jury must be convinced beyond a reasonable doubt that at the time of the offense

the defendant was mentally capable of knowing what he was doing, mentally capable of knowing it was wrong, and mentally capable of controlling his conduct. Wion v. United States, 325 F.2d 420, 430 (10th Cir.) (en banc), cert. denied, 377 U.S. 946, 84 S.Ct. 1354, 12 L.Ed.2d 309.

way. This court stated in United States v. Jacobs, 473 F.2d 461, 464, cert. denied, 412 U.S. 920, 93 S.Ct. 2740, 37 L. Ed.2d 147:

> It is well settled that there is a presumption that a person is sane. However, such a presumption is one of law, not an inference of fact. *In a criminal case, when some evidence of insanity is introduced from any source, the presumption of sanity disappears,* and the burden is upon the prosecution to prove to the satisfaction of the jury beyond a reasonable doubt that the defendant was sane when he committed the offense charged. (Emphasis added)

See also Davis v. United States, 364 F.2d 572, 574 (10th Cir.); Fitts v. United States, 284 F.2d 108, 112 (10th Cir.).

■■ From our examination of Davis v. United States, 160 U.S. 469, 16 S. Ct. 353, 40 L.Ed. 499, and of our decisions dealing with the presumption, we must hold that the presumption of sanity was not dissipated for purposes of the second trial by proof at the earlier trial, notice given of reliance of insanity, or by the fact that questions and answers during the prosecution's case at the second trial touched on Mr. Bettenhausen's competency. We feel that

whether the presumption of sanity disappeared for purposes of the second trial should be determined only in light of the proof, from whatever source, actually introduced at that trial, or of a showing furnished during pretrial procedures of an adjudication of incompetency. United States v. Shultz, 431 F.2d 907, 912 (8th Cir.); Tarvestad v. United States, 418 F.2d 1043, 1050–1051 (8th Cir.), cert. denied, 397 U.S. 935, 90 S.Ct. 944, 25 L.Ed.2d 116. Otherwise an unreasonable burden and risk would be imposed on the prosecution.

Thus we hold that the trial judge at the retrial here properly instructed the jury that the sanity issue was not available and was not to be considered. There was no showing during the pretrial procedure or at trial of an adjudication of incompetency. Moreover we have considered the evidence at retrial as to Mr. Bettenhausen's competency in light of proof required to raise the issue as discussed in Fitts v. United States, 284 F.2d 108, 112–113 (10th Cir.). We agree with the trial court that the issue of sanity was not raised for purposes of the retrial.

On the sanity issue defendant Bettenhausen argues further that it was error for the second trial judge to rule and instruct as he did in view of a different ruling by the first trial judge.[4] The

---

4. In an order overruling motions to acquit after the first trial, Chief Judge Brown stated in part:

> Donald contends that the question of his sanity at the time of the offenses' alleged commission was raised prior to trial; that he offered evidence prior to trial sufficient to rebut the presumption of sanity; that sanity thus became an element of the offenses and that the government had the affirmative burden to establish his sanity as a part of its case-in-chief; and that the evidence presented by the government in its case-in-chief failed to meet this burden.
>
> The government replies that there was no evidence offered by Donald sufficient to shift the burden to the government of establishing Donald's sanity and, in the alternative, that its evidence of Donald's sanity was legally sufficient. It has been held that:

'A defendant has the burden of introducing evidence sufficient to impair the legal presumption of criminal responsibility. Only when this presumption has been impaired' does the burden of proving sanity shift to the government.'

In addition, the type or degree of evidence sufficient to overcome the presumption of sanity is '. . . evidence of insanity produced from whatever source . . .' and '. . . any relevant evidence of mental illness . . .' *Such evidence need not be, and as a practical matter rarely would be, introduced at the trial itself. Rather, it is likely to come to the attention of the prosecution and the judge prior to trial, for example through a pretrial motion for a mental examination made by one charged with an offense, by claims of incompetency made in previous cases, or by a history of mental illness.* The determination of whether there is

earlier ruling did say that the issue of sanity was raised before the introduction of proof at trial, and that this shifted the burden to the Government. Defendant argues that this first ruling became the law of the case and that it was also relied on.

██ We cannot agree. The rule of the law of the case does not apply unless there is a final judgment that decided the issue. United States v. United States Smelting Co., 339 U.S. 186, 198–199, 70 S.Ct. 537, 94 L.Ed. 750; see Fontainbleau Hotel Corp. v. Crossman, 286 F.2d 926, 928 (5th Cir.), and authorities cited. The ruling in question here could have been reconsidered by the trial court and was not final. We feel the ruling at the second trial and the charge did not offend the rule of the law of the case or any principles of orderly procedure.

██ We are likewise satisfied there is no showing of reliance on the first ruling to Mr. Bettenhausen's prejudice. The trial judge indicated his doubt as to whether sanity was an issue before the second trial began. Later defense counsel examined the instructions after the Government rested and he then announced that he would rest without offering defense testimony. There was no objection that the defense was surprised and no request for a continuance to obtain testimony to raise the sanity issue. We find no showing of prejudice based on surprise or reliance on the earlier ruling.

██ In connection with the insanity issue the defendant also argues that several other errors occurred during the first trial. Such objections to rulings at that trial, which resulted in disagreement of the jury and declaration of a mistrial, are of no avail on this appeal following the second trial. Savage v. United States, 295 F. 686, 687 (4th Cir.). In sum we conclude there was no error in the trial court's treatment of the sanity issue.

### 3. *Sufficiency of the warnings and advice of rights*

Defendants contend that statements by both of them were erroneously admitted due to inadequacy of warnings and advice of rights by Special Agents of the IRS. Defendants say that the Special Agents failed at various times to identify themselves and the purpose of the inquiry, and failed to warn them of their constitutional rights to remain silent and to have the effective assistance of counsel in violation of IRS published procedures and constitutional decisions, relying on Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 and decisions enforcing administrative procedures, United States v. Leahey, 434 F.2d 7 (1st Cir.) and United States v. Heffner, 420 F.2d 809 (4th Cir.).[5]

After the defendants' 1967 return was selected through the usual process for audit, documents to support deductions claimed were requested. When these were furnished there were apparent al-

---

sufficient evidence to rebut the presumption of sanity is one for the Court, and not for the jury.

*In the instant case, the government was provided with sufficient information to raise the question of Donald's sanity through the omnibus hearing, the arraignment, the motion to determine competency to stand trial, and through the records of his psychiatric consultations which were furnished to the government prior to trial.*

The burden of proving Donald's sanity as an element of the offenses charged thus having shifted to the government, Donald further urges that the evidence, viewed in the light most favorable to the govern-

ment, was insubstantial to establish his sanity. We disagree. (Citations omitted) (emphasis added).

5. Reference is made to the language of the warning required by an Internal Revenue Service News Release of October 3, 1967 that: "As a Special Agent, I have the function of investigating the possibility of criminal tax fraud." See United States v. Bembridge, 458 F.2d 1262, 1263–1264 (1st Cir.) and United States v. Leahey, 434 F.2d 7, 9 (1st Cir.). The relevant IRS Press Releases of October 3, 1967, and October 21, 1968, are discussed and the pertinent provisions reproduced in the *Bembridge* and *Leahey* cases.

terations in checks and receipts. As soon as these were noted the return was referred to the Intelligence Division.

Four Special Agents and one group supervisor participated in different interviews with defendants. In each instance some warnings were given by the Agents. However, at least as to the last interview, which was with both defendants, the Agent was interrupted by Mr. Bettenhausen. The record does not show the nature or extent of what part of the prescribed warning was not given. At this interview both defendants made incriminating admissions. Such admissions had also been made at previous interviews and incriminating records were earlier furnished to the Agents.

▬▬▬ Thus, in some instances the record is unclear as to the extent of compliance with the 1967 and 1968 IRS Press Releases, which are discussed in United States v. Bembridge, 458 F.2d 1262 (1st Cir.). Without determining whether the procedures outlined for the Special Agents confer any procedural rights on the taxpayer, see United States v. Lockyer, 448 F.2d 417, 421 (10th Cir.), we are unwilling to uphold the defendants' contentions here. While compliance with the *Miranda* requirements themselves, when applicable must be demonstrated by the prosecution before introducing a defendant's incriminating statements, Miranda v. Arizona, 384 U.S. 436, 479, 86 S.Ct. 1602, 16 L. Ed.2d 694, as to the administrative requirements relied on here, we feel that it should be incumbent on the one claiming a violation of the administrative procedures to demonstrate noncompliance prejudicial to him. See United States v. Bland, 458 F.2d 1, 8 (5th Cir.); cf. Nardone v. United States, 308 U.S. 338, 341, 60 S.Ct. 266, 84 L.Ed. 307. And the focus should be on whether there was a substantial omission. See United States v. Bembridge, 458 F.2d 1262, 1264 (1st Cir.). Since no such showing was developed by defendants here, we feel there was no error in the trial court's rulings admitting the testimony by the Special Agents.

▬▬▬ Defendants argue that because they were taken down hallways and upstairs into an apparently inside room for interview, they were therefore entitled to full and complete warnings. We are satisfied, however, that our record shows no circumstances amounting to custody or meaningful restraint on defendants' freedom of action. See United States v. Brevik, 422 F.2d 449, 450 (8th Cir.), cert. denied, 398 U.S. 943, 90 S.Ct. 1861, 26 L.Ed.2d 279; United States v. Jaskiewicz, 433 F.2d 415, 419 (3d Cir.). And while forms of compulsion other than custody are relevant for Fifth Amendment purposes, see United States v. Jaskiewicz, supra at 419, we feel no showing was made of a coercive setting. There being no coercion, and no interrogation during custody or any meaningful restraint on defendants' freedom of action, the requirements of *Miranda* for full warnings did not apply. United States v. Hensley, 406 F.2d 481, 484 (10th Cir.); United States v. Jaskiewicz, supra, 433 F.2d at 419.[6]

▬▬▬ There are additional contentions of misconduct. Defendants say that Mr. Bettenhausen inquired of one Special Agent if he was in trouble and also if he needed a lawyer. The Agent said either he could not tell him, or he did not know whether he needed an attorney and that it would be his decision whether he needed an attorney. We see no misconduct prejudicial to the defendant's rights.

We conclude that no reversible error is shown as to the the admission of

---

**6.** We feel that since there was no showing of any such circumstances at the time of the discussions with defendants, the direct holding of *Hensley* applies. That holding calls for rejection of defendants' claim that they were entitled under *Miranda* to its prescribed warnings. We are, however, aware that United States v. Lockyer, 448 F.2d 417, 422 (10th Cir.), refers favorably to a broader interpretation of *Miranda* as applied to interrogations after reference of a case to the Intelligence Division.

proof over defendants' objections premised on the requirements for warnings and the Special Agents' conduct.

#### 4. *Speedy trial*

Defendants argue that they were deprived of "the right to a speedy and public trial" afforded by the Sixth Amendment. Their complaint is that the mistrial and discharge of the jury after the first trial occurred on February 18, 1972, and that the second trial was not commenced until December 5, 1972. They rely on the constitutional guaranty and the provisions of Kansas law requiring criminal prosecutions within specified periods and barring prosecution of persons not brought promptly to trial within them.[7] The defendants say that since federal law has no such limit·the State rule should be applied, as is done in federal civil cases applying a State limitations statute when the federal statute prescribes no limitation.

The Supreme Court has approved a balancing test to determine whether any violation of the right to a speedy trial has occurred, specifying that the factors to weigh are the length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. See Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101; United States v. Merrick, 464 F.2d 1087, 1090 (10th Cir.).

Our record reveals several developments between trials. Post-trial motions to acquit after the first trial were filed on February 25, 1972. On April 24 the trial court heard argument. The defendants' brief was filed May 15 and the Government's brief on June 12. On July 21 the trial court filed a lengthy Memorandum and Order dealing with several grounds for acquittal, and denied the motions to acquit.

On October 26, 1972 the defendants moved to strike the government's motion, filed in March, for a psychiatric examination of Mr. Bettenhausen. The trial court held a hearing on November 1 and ruled the next day that the Government was entitled to the examination.

As to the defendants' assertions of their right to a speedy trial, the trial court stated at the hearing on motions to acquit after the second trial that he had "never seen anybody so diligent in mounting the requests for a speedy trial," although he did not agree with the claim of denial of a speedy trial. Nevertheless, there is no showing of prejudice to the defendants by the interim between the trials.

 The interim was considerable, but it is understandable and not excessive under the circumstances and no prejudice is shown. We are not persuaded that there was any infringement of the right to a speedy trial under the standards of Barker v. Wingo. Moreover the Kansas statute does not apply. The proper measure of the federal right is that of federal constitutional law, and not that of the State. Cf. Simler v. Conner, 372 U.S. 221. And under federal law, fixed standards such as provided by the State statute are rejected in favor of the factors specified by the Supreme Court. Barker v. Wingo, supra, 407 U.S. at 521–522, 529–530, 92 S.Ct. 2182.

#### 5. *Conduct by Government counsel*

 Defendants strenuously argue that their right to a fair trial was denied by reason of improper argument by Government counsel and the interjection of prejudicial and inadmissible information concerning Mr. Bettenhausen's adjudication of competency to stand trial, in violation of 18 U.S.C.A. § 4244.

---

7. The defendants point to K.S.A. 22–3402 et seq. (Supp.1973). In substance the state statutes require trial within 180 days after arraignment unless delay shall occur as a result of the application or fault of the de-fendant, or unless a continuance is granted on special grounds. Otherwise the accused is required to be discharged from further liability to be tried on the charge.

In closing argument Government counsel referred to statements by prospective jurors on voir dire. The gist of the remarks cited dealt with the jurors' experiences with the IRS: that there had been nothing unpleasant in the jurors' involvement with IRS investigations; that the matter was straightened out; and that there was no prosecution. And, defending the IRS actions here, counsel argued that this case " . . . is the most flagrant violation of the income tax law that I have ever seen, and there is only one way to uphold that income tax law, and that is for you to enforce the law. . . . "

The statements of personal knowledge were clearly improper. United States v. Berger, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314. Counsel must not argue or interject his personal belief or knowledge. See e. g., United States v. Fancutt, 491 F.2d 312, 314 (10th Cir.); United States v. Martinez, 487 F.2d 973, 977 (10th Cir.); United States v. Perez, 493 F.2d 1339, 1343 (10th Cir.). The comments on the prospective jurors' statements on voir dire were also improper. And it is clear that the reference to the adjudication of competency to stand trial was plainly barred by 18 U.S.C.A. § 4244.

We must decide whether the improper remarks were prejudicial. As to the reference to the adjudication of competency to stand trial, we see no prejudice since the issue of sanity was not submitted and was removed from the jury's consideration entirely. And in view of the strength of the government's uncontradicted proof, we are satisfied here that all the conduct complained of did not influence the jury or had but very slight effect. In such circumstances the conviction should not be disturbed. Kotteakos v. United States, 328 U.S. 750, 764–765, 66 S.Ct. 1239, 90 L.Ed. 1557.

### 6. The applicability of 18 U.S.C.A. § 1001

Defendants argue that they should not have been prosecuted for a felony under 18 U.S.C.A. § 1001 for submitting the documents to the IRS. They say instead that 26 U.S.C.A. § 7207, a misdemeanor statute specifically dealing with delivering any document, etc., to the IRS, known to be fraudulent or false, should control over the general statute, relying on Ex Parte United States, 226 U.S. 420, 33 S.Ct. 170, 57 L.Ed. 281, and similar cases.[8]

The trial court rejected the contention. He reasoned that 18 U.S.C.A. § 1001 reaches anyone who "makes or uses" the document, while 26 U.S.C.A. § 7207 deals only with a person who "delivers or discloses" the document. Thus the felony statute was viewed as involving a type of offense—making the false document—not dealt with by the misdemeanor statute. And here the indictment in Counts IV through XI charged making and using the false statements.

We agree with the trial court. The indictment did charge the making

---

8. 18 U.S.C.A. § 1001 provides:

Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

26 U.S.C.A. § 7207 provides:

Any person who willfully delivers or discloses to the Secretary or his delegate any list, return, account, statement, or other document, known by him to be fraudulent or to be false as to any material matter, shall be fined not more than $1,000, or imprisoned not more than 1 year, or both. Any person required pursuant to section 6047(b) or (c) to furnish any information to the Secretary or any other person who willfully furnishes to the Secretary or such other person any information known by him to be fraudulent or to be false as to any material matter shall be fined not more than $1,000, or imprisoned not more than 1 year, or both.

and using violation under the terms of 18 U.S.C.A. § 1001 and 18 U.S.C.A. § 2. Moreover the charge stated that the acts of making and using, or causing to be made and used, a false writing or document was one of the essential elements of the offense under the indictment. And there was substantial proof that several of the documents involved here were altered by one defendant or the other. By direct or circumstantial evidence the making of the false documents by defendants was established sufficiently to support the verdict.

While the statutes overlap considerably, we agree that the offense of "making" reached by 18 U.S.C.A. § 1001 is significant in this case. Different proof was required for the offense of making under that statute, justifying prosecution under it. See United States v. Beacon Brass Co., 344 U.S. 43, 45, 73 S.Ct. 77, 97 L.Ed. 61. On this record we are satisfied that prosecution was permissible under 18 U.S.C.A. § 1001.

Defendants also argue that it is improper that there be prosecution by several counts under 18 U.S.C.A. § 1001 when a group of documents is furnished at one time. They point out that they were charged with four offenses covering documents submitted in support of the 1966 return and that there was only proof of the documents being submitted at one time. The argument is that there is but a single offense under Bell v. United States, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905, and similar cases, not subject to multiple prosecution.

We disagree. While in another clause § 1001 uses the plural terms "fraudulent statements or representations," in the clause we are concerned with the statute turned to the singular terms—"any false writing or document. . . ." We feel the statute aims at the making or using of each "false writing or document" and intends the wrong connected with each to be a separate offense. While penal statutes are strictly construed, the maximum is not a command to override common sense and the

evident statutory purpose. See United States v. Cook, 384 U.S. 257, 262, 86 S. Ct. 1412, 16 L.Ed.2d 516.

### 7. *Sufficiency of the evidence*

The defense argues that Mrs. Bettenhausen's conviction on Count III in connection with the 1968 joint return is not supported by the evidence. The contention is that the only evidence was that she told the agents, without proper preinterrogation warning, that she signed the return but that she was not aware of its contents.

From proof of one's signing a return it may be believed that he knew its contents, provided a proper instruction under § 7206(1) is given, as it was here, that the jury must find beyond a reasonable doubt that the accused did not believe the return to be true and correct as to every material matter alleged in the indictment and that the act or acts constituting the offense were done knowingly and willfully, among other required elements of the offense. See United States v. Wainwright, 413 F.2d 796, 802 (10th Cir.). We feel the proof on the Count was sufficient, when we view it in the light most favorable to the Government as we must after the verdict of guilty.

Defendants contend also that there was no proof of the fact that the check involved in Count X was ever submitted to the IRS. While such proof was made as to other documents in some instances with specific testimony on their submission (e. g., Tr. 550), we find that the conviction on Count X had only general and circumstantial testimony to support it. It was testified that supporting records for expenses on the 1968 return, consisting of cancelled checks and receipts, were delivered by Mr. Bettenhausen to Agent Nitschke (Tr. 371–72); that Agent Waddell began his investigation from documents that had been submitted by the taxpayers to other agents and examined checks, etc., and all of the papers assigned to him with that file (Tr. 488); that Wad-

dell discussed the Dr. Castain $60.00 deduction for 1968 with defendants, and discussed exhibits with them (Tr. 551); and Waddell identified Government exhibit 26—the check for this deduction—which was admitted (Tr. 551–54).

In reviewing a conviction on a guilty verdict, this court is bound to view the evidence presented in the trial court in the light most favorable to the Government to ascertain if there is sufficient substantial proof, direct and circumstantial, together with reasonable inferences to be drawn therefrom, from which a jury might find a defendant guilty beyond a reasonable doubt. United States v. Twilligear, 460 F.2d 79 (10th Cir.). Viewed in this light we feel the proof is sufficient to sustain the conviction on Count X.

We have examined the defendants' remaining contentions and find them to be without merit. No reversible error is shown and the judgments are affirmed.