**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Lewis SHUCKAHOSEE,**
**Defendant-Appellant.**

**No. 78–1284.**

United States Court of Appeals,
Tenth Circuit.

Argued May 18, 1979.

Decided Nov. 15, 1979.

Rehearing Denied Jan. 9, 1980.

Leonard D. Munker, Wichita, Kan., for defendant-appellant.

Roger M. Theis, Asst. U. S. Atty., Topeka, Kan. (with James P. Buchele, U. S. Atty., Topeka, Kan., on brief), for plaintiff-appellee.

Before HOLLOWAY, BARRETT and McKAY, Circuit Judges.

McKAY, Circuit Judge.

Lewis Shuckahosee appeals from his conviction of two counts of premeditated murder.[1] He raises a number of issues for our consideration. He believes that there was no probable cause for his arrest and that a confession obtained immediately thereafter should have been excluded from his trial. He argues that the district court erred in refusing to give instructions on a posited insanity defense, on the credibility of accomplice testimony, on the limited credibility of intoxicated eyewitnesses, and on a "defense of another" defense. Finally, Shuckahosee believes the court erred in admitting as evidence, to his prejudice, various photographs of the murder victims.[2] Although the appellant has raised a number of significant issues, we must, on the record before us, affirm his conviction.

I.

It is conceded that Shuckahosee fired the shots that resulted in two deaths. At issue is whether those actions constitute murder and, in particular, premeditated murder. The following factual outline provides the background necessary for understanding the issues on appeal.

Appellant Lewis Shuckahosee and his brother, Reginald, were drinking alcoholic beverages together on April 30, 1977. Reginald was involved in two altercations, one involving a weapon, at two different taverns. At about midnight, the two drove to a site known as Strawberry Hill where approximately two dozen people had gathered. All, or nearly all, were drinking. Shortly after his arrival at Strawberry Hill, Reginald entered into an argument with Norman Wishteyah. The argument escalated into a fight in which Reginald was knocked

---

1. Shuckahosee was charged under 18 U.S.C. § 1111, with reference to 18 U.S.C. §§ 7, 1151–53 (1976). The murders occurred on the Kickapoo Indian Reservation in Brown County, Kansas. The defendant and the victims are all American Indians.

2. Shuckahosee also initially contested the district court's jurisdiction over the case. However, because of *United States v. John*, 437 U.S. 634, 649, 98 S.Ct. 2541, 57 L.Ed.2d 489 (1978), and *United States v. Antelope*, 430 U.S. 641, 97 S.Ct. 1395, 51 L.Ed.2d 701 (1977), he has conceded the jurisdictional issue on appeal. Brief for Appellant at 36–37.

to the ground and his shoulder painfully injured. Reginald called for help to Lewis, who was sitting in a nearby car. Responding, Lewis fired a pistol at Wishteyah, wounding him in the arm, as Wishteyah ran from the scene. Lewis shot two more persons with the pistol—Norris McKinney and Eric Hosie—neither of whom had been involved initially in the fight but who, Lewis testified, were advancing toward him after he shot Wishteyah. Reginald testified that Lewis then took a rifle from him, walked to McKinney and Hosie, and shot each in the face.

Lewis drove Reginald to a Topeka hospital to have the injured shoulder attended to, and Lewis then began flight. Reginald was arrested for the crimes as a principal under Kansas law. On May 23, 1977, the Brown County Attorney received a letter from Lewis confessing to the two homicides and absolving his brother of blame. At trial the letter was admitted as evidence and its authenticity stipulated. Despite the letter from Lewis, Reginald was released from state custody for the murders only after Kansas authorities determined that the federal government had jurisdiction. Although Reginald was convicted in state court for assault based on one of the tavern incidents, he was not federally indicted for the murders.

On June 10, 1977, Lewis was apprehended in Salt Lake City and advised of his *Miranda* rights. Three days later while being interviewed, he confessed to both killings. The confession was admitted at trial, after an unsuccessful suppression attempt. In addition to the two confessions, the prosecution relied primarily on the testimony of Reginald and other persons who had been present at Strawberry Hill. In defense Shuckahosee called a psychiatrist and a clinical psychologist and took the stand himself.

## II.

■ Shuckahosee was apprehended after a Salt Lake City blood bank had submitted a list of its patrons' names and social security numbers, including Shuckahosee's, to the F.B.I. That information, fed into the Bureau's National Crime Information Center computer, alerted local officials to the presence of a fugitive from justice. Shuckahosee argues that the blood bank-F.B.I. relationship evidences an "overreaching of federal executive authority" and an invasion of his privacy. Brief for Appellant at 38. These defects allegedly tainted his arrest and the resulting confession.[3] We must reject this contention.

■ While the blood bank's reporting practices may injure its capacity to recruit donors, reviewing the wisdom of the practice is not our function. Under the existing case law, the practices of private bodies in voluntarily aiding law enforcement officials do not implicate either the Fourth Amendment's restrictions on searches and seizures or the broader constitutional protections against invasions of privacy. *See United States v. Gibbons*, No. 77–1965, at 8–9 (10th Cir. Sept. 11, 1979); *United States v. Sherwin*, 539 F.2d 1, 8 (9th Cir. 1976), *cert. denied*, 437 U.S. 909, 98 S.Ct. 3101, 57 L.Ed.2d 1140 (1978); *United States v. Jones*, 457 F.2d 697, 699 (5th Cir. 1972). Once the F.B.I. learned that Shuckahosee was a fugitive, clear probable cause existed for his arrest. *See United States v. Smith*, 461 F.2d 246 (10th Cir. 1972).

## III.

■ The most troubling issue raised on appeal is Shuckahosee's claim that the district court erred in not giving properly requested instructions on an insanity defense. This court has consistently stated that, once a criminal defendant has introduced evidence to rebut the presumption of sanity, the government may not remain silent and prevail. If the government rebuts the insanity evidence, a factual question is created that *must* be submitted to the jury. If

---

**3.** On appeal the appellant questions neither the validity of the statement under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), nor its voluntary character.

the insanity evidence remains unrebutted, the defendant is entitled to a directed verdict. *See United States v. Bettenhausen,* 499 F.2d 1223, 1229 (10th Cir. 1974); *Fitts v. United States,* 284 F.2d 108, 112 (10th Cir. 1960). Since the psychiatrist and the psychologist who testified on Shuckahosee's behalf asserted that the required elements of insanity were present, *see United States v. Munz,* 504 F.2d 1203, 1208 (10th Cir. 1974); *Wion v. United States,* 325 F.2d 420, 430 (10th Cir. 1963), *cert. denied,* 377 U.S. 946, 84 S.Ct. 1354, 12 L.Ed.2d 309 (1964),[4] appellant argues that the district court was obligated, at a minimum, to submit the issue to the jury. Furthermore, since no psychiatrist testified for the government, appellant argues that the trial court should have directed his acquittal. We hold, however, that where the "insanity" evidence was founded wholly on voluntary intoxication, the district court was correct in determining that, as a matter of law, the insanity issue had not been adequately introduced.

 This court, and other courts, have been unwilling to treat evidence of alcoholism, standing alone, as sufficient to raise the insanity issue.[5] Although both of the defense specialists testified that, in their opinions, alcoholism is a mental disease within the legal insanity definition, *see, e. g.,* Record, vol. 3, at 714, 849, that characterization does not represent the predominant medical opinion.[6] *See* Record, vol. 3, at 750–51. Even if it were the dominant theory, we are not prepared from available evidence to repudiate a long-standing body of law.[7] That body of law attaches responsibility to criminal acts following alcoholic ingestion that is, at least initially, voluntary. *See United States v. Burnim,* 576 F.2d 236, 237–38 (9th Cir. 1978); *United States v. Jacobs,* 473 F.2d 461, 464–65 (10th Cir.), *cert. denied,* 412 U.S. 920, 93 S.Ct. 2740, 37 L.Ed.2d 147 (1973); *Kane v. United States,* 399 F.2d 730, 736, 736 n. 10 (9th Cir. 1968), *cert. denied,* 393 U.S. 1057, 89 S.Ct. 698, 21 L.Ed.2d 699 (1969). For the insanity defense to be available, the mental condition must have been brought about by circumstances beyond the control of the defendant. *Kane v. United States,* 399 F.2d at 735. If the defendant has the ability to resist the initial drink, the condition is within his control. Particularly when a person has reason to know that his behavior while intoxicated often approaches criminality, we do not wish to remove whatever deterrent effect the criminal law has on such behavior.[8]

At trial Shuckahosee did not introduce evidence that his decision to begin drinking

---

4. We have adopted the Model Penal Code definition of insanity: "[A] person is not criminally responsible for his conduct if, at the time of such conduct, as a result of mental disease or defect, he lacked substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law." *Wion v. United States,* 325 F.2d at 430.

5. *Fitts v. United States,* 284 F.2d 108 (10th Cir. 1960), is not to the contrary. There defendant's mental illness was caused by chronic alcoholism, but it had come to have an existence independent of the alcoholism. Furthermore, in *Fitts* the evidence of insanity sufficient to rebut the presumption was shown by an adjudication of mental illness that resulted in confinement. *Id.* at 113.

6. The widely varying interpretations of alcoholism are canvassed in Mr. Justice Marshall's opinion in *Powell v. Texas,* 392 U.S. 514, 522–26, 88 S.Ct. 2145, 20 L.Ed.2d 1254 (1968).

7. *Cf.* "[M]edical decisions concerning the use of a term such as 'disease' or 'volition,' based as they are on the clinical problems of diagnosis and treatment, bear no necessary correspondence to the legal decision whether the overall objectives of the criminal law can be furthered by imposing punishment." *Powell v. Texas,* 392 U.S. 514, 541, 88 S.Ct. 2145, 2158, 20 L.Ed.2d 1254 (1968) (Black, J., concurring).

8. In upholding a conviction for public drunkenness, Mr. Justice Marshall wrote: "We are unable to conclude, . . . on the current state of medical knowledge, that chronic alcoholics . . . suffer from such an irresistible compulsion to drink and to get drunk in public that they are utterly unable to control their performance of either or both of these acts and thus cannot be deterred at all from public intoxication." *Powell v. Texas,* 392 U.S. at 535, 88 S.Ct. at 2155. We are even less willing to discount potential deterrent effects when murder is the crime at issue.

alcoholic beverages was anything but voluntary.[9] Indeed, both the psychiatrist and the psychologist testified that his diminished capacity to resist alcohol arises only after he has begun drinking. *See, e. g.,* Record, vol. 3, at 697, 724, 872. Shuckahosee did not perceive himself as an alcoholic; in fact, he and his wife both testified that his drinking was of the weekend "binge" sort—with periods of up to a month between drinking bouts. *Id.* at 790, 916, 933. Neither of his expert witnesses testified that Shuckahosee suffered from any mental defects or organic brain damage as a result of alcoholism. *See, e. g.,* Record, vol. 3, at 729–32. Finally, Shuckahosee was well aware of the dangers that attend his drinking; he testified that "when I'm drinking I don't know what I'm doing." Record, vol. 3, at 792–93. Under these circumstances, the established rule should apply. The trial judge's characterization of Shuckahosee's evidence—"All they said was that once he started drinking he can't stop," Record, vol. 3, at 961—was proper and dispositive of the issue.[10]

 We emphasize that we do not question that intoxication, even though quite voluntary, may negate the existence of the specific intent required for conviction of many crimes. While Shuckahosee does suggest on appeal, almost as an aside, that his conviction for premeditated murder was therefore improper, we note that the trial judge's instruction on the point was above reproach.[11] Because the jury did have before it evidence from which it could properly have inferred premeditation—for example, statements attributed to Shuckahosee[12] and the apparently calculated moves in shooting the victims one-by-one—we may not overturn the verdict on that point.

## IV.

 Shuckahosee asserts that, because his brother Reginald was both the primary prosecution witness and effectively an accomplice to the crimes, the district court erred in not specifically instructing the jury on the diminished credibility of accomplice testimony. We find Shuckahosee's arguments not compelling. More than sufficient other evidence was introduced to corroborate Reginald's testimony as to his brother's culpability.

In a long line of cases, beginning with *Butler v. United States,* 408 F.2d 1103 (10th

---

**9.** We therefore need not consider anew whether a person totally unable to abstain from drinking may assert an insanity defense. Historically the availability of that defense, even under such stark circumstances, is "problematic." *Kane v. United States,* 399 F.2d at 736 n. 9.

**10.** Independent evidence of the susceptibility of the American Indian to alcoholism was received at trial through introduction of a National Institute of Mental Health booklet, *Suicide, Homicide, and Alcoholism Among American Indians: Guidelines for Help* (1973). Both of Shuckahosee's expert witnesses testified to the seriousness of the problem. We certainly do not question the gravity of that problem. However, it does not overcome the conclusions we have reached here.

**11.** In pertinent part, that instruction reads:

Although intoxication or drunkenness alone will never provide a legal excuse for the commission of a crime, the fact that a person may have been intoxicated at the time of the commission of a crime may negate the existence of a specific intent.

So, evidence that a Defendant acted or failed to act while in a state of intoxication is to be considered in determining whether or not the Defendant acted, or failed to act, with specific intent, as charged.

The element of premeditation necessary for first degree murder implies the formation of a specific intent. No specific intent, of the type which might be negated by evidence of intoxication, is necessary for a Defendant to be guilty of second degree murder or voluntary manslaughter.

If the evidence in the case leaves the jury with a reasonable doubt whether, because of the degree of his intoxication, the mind of the accused was capable of forming, or did form, specific intent to commit the crime charged, the jury should acquit the accused of that crime.

Record, vol. 3, at 1013.

**12.** Witnesses attributed to Shuckahosee such statements as "Leave him alone. These aren't the ones we're looking for," Record, vol. 2, at 311, and "I'm going to go over there and see if anybody is still alive." Record, vol. 2, at 358.

Cir. 1969), this court has required that when the testimony of accomplices is uncorroborated—or nearly so—the court "must instruct the jury as to the manner in which such testimony should be considered." 408 F.2d at 1105. *See, e. g., United States v. Carpenter,* 535 F.2d 1218 (10th Cir. 1976); *United States v. Webb,* 466 F.2d 190, 192 (10th Cir. 1972), *cert. denied,* 414 U.S. 1012, 94 S.Ct. 378, 38 L.Ed.2d 250 (1973); *United States v. Owens,* 460 F.2d 268, 269 (10th Cir. 1972). But even if we were to view Reginald as an accomplice, we could not say that the requested instruction was mandatory.[13] Lewis Shuckahosee was not convicted only, or primarily, on the testimony of his brother. The jury had before it two separate confessions—the letter exculpating Reginald and the statement following arrest— and a surplus of circumstantial evidence to justify its verdict. We have indeed held that failure to give an accomplice instruction where the testimony is uncorroborated is so serious as to constitute plain error, *see, e. g., United States v. Owens,* 460 F.2d 268, 269 (10th Cir. 1972), but we are faced with no such circumstances here. The trial court's general instruction on the weight to be accorded witness testimony,[14] taken with the other instructions as a whole, was sufficient for the purpose. "As a general rule, the necessity, extent and character of additional instructions are matters within the sound discretion of the trial judge." *United States v. Miller,* 546 F.2d 320, 324 (9th Cir. 1976).

## V.

■ Because all or nearly all of the witnesses at the scene had been drinking,

Shuckahosee maintains that the trial court was obligated to instruct the jury on the limited competency of such witnesses. The court had, however, advised the jury to consider each witness' "ability and opportunity to observe and know the things about which he has testified." Record, vol. 3, at 1017. We are unwilling to hold that, given the direction to the jury members to use their common sense and experience in evaluating testimony, *see* note 14, *supra,* failure to give a more specific instruction was reversible error.

## VI.

■ Shuckahosee claims on appeal that his actions were directed to the defense of his brother, Reginald, and that the trial court erred in not instructing the jury on the defense of another. On the record before us, we do not find error. Although a jury might reasonably infer, from the evidence presented, that Lewis Shuckahosee fired at Wishteyah in defense of his brother, absolutely no evidence was presented to suggest that McKinney and Hosie, the murder victims, were attacking Reginald or that Lewis had reason to believe that Reginald required defense from them. Lewis did testify, consistent with his prior confessions, that McKinney and Hosie were coming toward *him.* Such testimony fits a theory of self-defense, and the trial court instructed quite properly on that issue.

## VII.

■ In his final assignment of error, Shuckahosee maintains that various photographs of the victims' bodies admitted at trial prejudiced him and were not redeemed

---

**13.** There is considerable doubt that Reginald was, in fact, an accomplice, but we need not reach that question.

**14.** In pertinent part, that instruction reads:

It is for you to determine the weight and credit to be given the testimony of each witness. You have a right to use that knowledge and experience which you possess in common with men in general, in regard to the matter about which a witness has testi-

fied. You may take into account his ability and opportunity to observe and know the things about which he has testified, his memory, manner, and conduct while testifying, any interest he may have in the result of this trial, and the reasonableness of his testimony considered in the light of all the evidence in this case.

Record, vol. 3, at 1017.

**1358**

by their probative value. The photographs in question were taken by an agent of the Kansas Bureau of Investigation at the morgue, not at the crime scene, and were used at trial, at least in part, for identification purposes by nonmedical persons.

The prosecution attorney assured the court, in seeking their admission, that the photographs would be tied "in to the forensic expert." Record, vol. 2, at 183. The government, perhaps unwittingly, misled the court; the court itself certainly understood "that they would tie into the medical testimony the Court was going to hear." Record, vol. 3, at 557. When the forensic pathologist took the stand, however, he brought his own slides for demonstrative purposes. He had not even seen the photographs at issue. *Id.* at 555.

On the record before us, we believe that the trial court, although placed in an awkward position by the government, was correct in deciding that these photographs were not overly prejudicial when weighed against their independent justification for admission. The photographs were not overly "gruesome," *id.* at 558–59, and the impact beyond that of the slides shown by the forensic pathologist should have been minimal. Furthermore, like the slides, the pictures went "to the defense that is being offered of self-defense and of intoxication," *id.* at 559, because they showed facial wounds from point-blank shots. We cannot say that the trial court abused its discretion. *See United States v. Shoemaker,* 542 F.2d 561, 564 (10th Cir.), *cert. denied,* 429 U.S. 1004, 97 S.Ct. 527, 50 L.Ed.2d 616 (1976); *United States v. Hoog,* 504 F.2d 45, 50 (8th Cir. 1974), *cert. denied,* 420 U.S. 961, 95 S.Ct. 1349, 43 L.Ed.2d 437 (1975); *United States v. Cartano,* 420 F.2d 362, 364 (1st Cir.), *cert. denied,* 397 U.S. 1054, 90 S.Ct. 1398, 25 L.Ed.2d 671 (1970).

AFFIRMED.